1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

UNITED STATES OF AMERICA,

Case No. 2:15-cr-00285-APG-PAL

8

                                        Plaintiff,

**REPORT OF FINDINGS AND RECOMMENDATION**

9

        v.

10

CHARLES BURTON RITCHIE,

(Mot. to Dismiss – ECF No. 111)

                                        Defendant.

11

12      This matter is before the Court on Defendant Charles Burton Ritchie's Motion to Dismiss

13  (ECF No. 111).   This Motion is referred to the undersigned for a report of findings and

14  recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of

15  Practice.  The court has considered the Motion, the Government's Response (ECF No. 113), and

16  Ritchie's Reply (ECF No. 114) and Addendum (ECF No. 115).

17      As an initial matter, the court notes that Mr. Ritchie filed the motion on behalf of himself.

18  Although the motion frequently refers to Benjamin Galecki, Ritchie's co-defendant, Galecki did

19  not file a motion to join in Ritchie's substantive arguments.  Therefore, this report of findings and

20  recommendation addresses Ritchie individually.

21                          <u>**BACKGROUND**</u>

22  **I.    THE INDICTMENTS**

23      **A.  Eastern District of Virginia**

24      On September 8, 2015, Ritchie and Galecki were initially charged in a 37-count Indictment

25  in the Eastern District of Virginia.  *See United States v. Ritchie, et al.*, Case No. 4:15-cr-0018-

26  RAJ-LRL (E.D. Va.).  Ritchie was charged with one count of conspiracy to distribute and possess

27  with intent to distribute controlled substances and controlled substances analogues in violation of

28  21 U.S.C. §§ 846 and 813.  A Superseding Indictment was returned on August 9, 2016, charging

Ritchie with seven counts:

- Count One – Conspiracy to distribute and possess with intent to distribute controlled substances and controlled substances analogues in violation of 21 U.S.C. §§ 802(6), 813, and 846.
- Count Three – Use of a communication facility in violation of 21 U.S.C. § 843(b).
- Counts Four to Six – Interstate transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952(a)(3).
- Counts Seven and Eight – Distribution and possession with intent to distribute controlled substances and controlled substances analogues in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1(C).

*See* Resp. Ex. 3 (ECF No. 113-3), E.D. Va. Superseding Indict. The charges also included a forfeiture allegation, but not against Ritchie.

It was alleged that Ritchie and Galecki were the owners and operators of Zencense Incenseworks ("Zencense"), a Florida-based company that "manufactured schedule I controlled substances and schedule I controlled substance analogues, analogues as defined in 21 U.S.C. § 802(32), with intent for human consumption as stated in 21 U.S.C. § 813." The substances were generally referred to as "spice," and they were designed and intended to produce an effect similar to controlled substances. Hampton Pipe and Tobacco, 7 City Gifts, Blazin Herbs, and Red Barn were Virginia-based businesses that sold spice products supplied by Zencense and its successor entity. Co-defendants Nader Abdallah and Sharif Abdallah owned, operated, and controlled the Red Barn, a gas station and convenience store located in Newport News, Virginia, which they used to sell spice. In or about October 2012, Ritchie and Galecki purportedly sold Zencense and the company became Zenbio. However, they continued to participate in the business' operation.

Ritchie, along with his three co-defendants, were charged in Count One (the "Virginia distribution conspiracy") as follows:

From in or about January 2012 continuing to in or about April 2015, in the Eastern District of Virginia and elsewhere, CHARLES BURTON RITCHIE (in or about August 2012 to in or about April 2013 only), BENJAMIN GALECKI (in or about August 2012 to in or about April 2013 only), NADER ABDALLAH and SHARIF ABDALLAH did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree together with other persons, both known and unknown to the Grand Jury, to commit the following offenses against the United States:

1. To knowingly, intentionally and unlawfully distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of UR-144, XLR-11/5-FUR-144, AB-FUBINACA,

AB-CHMINACA, and AB-PINACA, each a Schedule I controlled substance as defined in 21 U.S.C. § 802(6).

2.  To knowingly, intentionally and unlawfully distribute and possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of UR-144, XLR-11/5-FUR-144, AB-CHMINACA, and AB-PINACA, Schedule I controlled substance analogues as defined in 21 U.S.C. § 802(32), with intent for human consumption as stated in 21 U.S.C. § 813.

E.D. Va. Superseding Indict. at Count One.  The object of the Virginia distribution conspiracy was "for the co-conspirators to distribute the above named substances in the Hampton Roads area of the Eastern District of Virginia and elsewhere and profit by doing so."  For overt acts, the government alleged that Zencense and Zenbio sent numerous invoices for spice to Virginia smoke shops between August 9, 2012, and April 11, 2013.  Zenbio allegedly sent Nader Abdallah multiple invoices for spice to be shipped to Red Barn December 2012 and January 2013.  Abdallah remitted numerous payments to Zenbio from December 2012 to March 2013.

Ritchie was convicted as charged in January 2017.

**B.  District of Nevada**

Ritchie was initially charged in this district in an eight-count Indictment (ECF No. 1) returned October 13, 2015.  A Superseding Indictment (ECF No. 56) was returned August 24, 2016, charging Ritchie with 26 counts and four corresponding forfeiture allegations:

- Count One – Continuing criminal enterprise in violation of 21 U.S.C. § 848.
- Count Two – Conspiracy to engage in financial transactions to promote unlawful activity in violation of 18 U.S.C. § 1956(h).
- Count Three – Conspiracy to transport funds to promote unlawful activity in violation of 18 U.S.C. § 1956(h).
- Counts Four to Seven – Transporting funds to promote unlawful activity in violation of 18 U.S.C. § 1956(a)(2)(A) and 18 U.S.C. § 2.
- Count Eight – Conspiracy to launder money instruments in violation of 18 U.S.C. § 1956(h).
- Count Nine – Conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349.
- Counts Ten to Thirteen – Mail fraud in violation of 18 U.S.C. § 1341 and § 2.
- Count Fourteen – Conspiracy to commit  wire fraud in violation of 18 U.S.C. § 1349.
- Counts Fifteen to Nineteen – Wire fraud in violation of 18 U.S.C. § 1343 and § 2.
- Count Twenty – Conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance and a controlled substance analogue to the extent intended for human consumption in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.

- Count Twenty-One – Possession with intent to distribute a controlled substance and a controlled substance analog to the extent intended for human consumption in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.
- Count Twenty-Two – Conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance analogue intended for human consumption in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C) and 846.
- Count Twenty-Three – Manufacture a controlled substance analogue to the extent intended for human consumption in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2.
- Count Twenty-Four – Distribution of a controlled substance analogue in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2.
- Count Twenty-Five – Maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.
- Count Twenty-Six – Possession of a listed chemical with the intent to manufacture a controlled substance analogue intended for human consumption in violation of 21 U.S.C. § 841(c) and 18 U.S.C. § 2.

Galecki is also charged in all counts and forfeiture allegations. Defendant Ryan Eaton is charged in Counts Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Five, and Twenty-Six.

The Superseding Indictment alleges that Zencense employed Eaton by February 2012. In or about March 2012, Ritchie registered Zencense with the Nevada Secretary of State as a foreign business. Two months later, Ritchie leased a warehouse in Las Vegas, and Eaton relocated to Las Vegas to begin manufacturing spice at the warehouse. The government alleges that between on or about May 28, 2012, and July 25, 2012, Ritchie and his co-defendants manufactured and caused to be manufactured up to 200 kilograms of spice per week in the Las Vegas warehouse. During that time, Eaton mailed the spice to Zencense's office in Pensacola, Florida, for packaging into packets with labels. Between May and August 2012, Ritchie and Galecki deposited at least $1.5 million in proceeds of Zencense's spice manufacturing and distribution operations into a business bank account and then withdrew and transferred more than $830,000 from that account.

In Count One, the government alleges:

From in or about March 2012, to in or about August 2012, within the District of Nevada, and elsewhere, defendants [Ritchie and Galecki] did intentionally and knowingly engage in a continuing criminal enterprise in that they intentionally and knowingly violated [21 U.S.C. §§] 841(a)(l), (b)(l)(C), and 856(a)(l), which violations include, but are not limited to, the substantive violation[s] alleged in [Counts 21, 23, 24, 25, 26], which Counts and Overt Acts set forth in those Counts are realleged and incorporated herein by reference as if fully set forth in this Count, and which violations were part of a continuing series of violations of the Controlled Substances Act, [21 U.S.C. §] 801, et seq., undertaken by defendants Ritchie and Galecki in concert with at least five other persons with respect to whom defendants Ritchie and Galecki occupied positions of organizer, supervisor, and any position

of management, and from which such continuing series of violations the defendants obtained substantial income and resources; all in violation of 21 U.S.C. § 848.

D. Nev. Superseding Indict. (ECF No. 56) at 6–7, ¶ 17.

In Count Twenty, the following is alleged:

From in or about March 2012, to in or about August 2012, in the District of Nevada, and elsewhere, defendants … did intentionally and knowingly conspire, confederate, and agree with one another, and with others known and unknown to the Grand Jury, to manufacture, possess with intent to distribute, and distribute:

> (a) a mixture and substance containing a detectable amount of 1-(5-fluoropentyl)-3-(1-naphtoyl)indole ("AM2201"), a Schedule I controlled substance as of July 9, 2012;
>
> (b) a mixture and substance containing a detectable amount of 1-( 5-fluoropentyl)-3-(1-naphtoyl)indole ("AM2201"), a controlled substance analogue prior to July 9, 2012, as that term is defined in 21 U.S.C. § 802(32)(A), of 1-pentyl-3-(1-naphthoyl)indole ("JWH-018"), a Schedule I controlled substance, knowing that the substance was intended for human consumption as provided in 21 U.S.C. § 813;

all in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(C), and 846.

*Id.* at 16, ¶ 45.

Count Twenty-Two alleges:

From in or about March 2012, to in or about August 2012, in the District of Nevada, and elsewhere, defendants … did intentionally and knowingly conspire, confederate, and agree with one another, and with others known and unknown to the Grand Jury, to manufacture, possess with intent to distribute, and distribute a mixture and substance containing a 1-(5-fluoropentyl)-3-(2,2,3,3-tetramethylcyclopropoyl)indole ("XLR-11"), a controlled substance analogue as that term is defined in 21 U.S.C. § 802(32)(A), of 1-pentyl-3-(1-naphthoyl)indole ("JWH-018"), a Schedule I controlled substance, knowing that the substance was intended· for human consumption as provided in 21 U.S.C. § 813; all in violation of 21 U.S.C.§§ 841(a)(l), 841(b)(l)(C), and 846.

*Id.* at 18, ¶ 49.  Notably, all of the conduct alleged in Nevada occurred between in or about March 2012 and August 2012.

## **DISCUSSION**

### I.    LEGAL STANDARD

Pursuant to Rule 12 of the Federal Rule of Criminal Procedure, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987). Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a

preview of the government's evidence and an opportunity to cross-examine its witnesses. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

The Double Jeopardy Clause of the Fifth Amendment protects a person from being "twice put in jeopardy of life or limb" for the same criminal offense. U.S. Const. amend. V. The clause provides "three separate constitutional protections," it protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Camacho*, 413 F.3d 985, 988 (9th Cir. 2005) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

"The double jeopardy clause precludes the government from dividing a single conspiracy into multiple charges and pursuing successive prosecutions against the defendant." *United States v. Guzman*, 852 F.2d 1117, 1119–20 (9th Cir. 1988); *see also Braverman v. United States*, 317 U.S. 49, 53 (1942). However, the double jeopardy bar applies only where the defendant is punished or tried for two offenses that fail the "same-elements" test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). Double jeopardy protections are, therefore, limited by the interpretation of what constitutes the "same offense." *United States v. Arlt*, 252 F.3d 1032, 1035 (9th Cir. 2001) (en banc) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). The Supreme Court has recognized that it is up to the legislature to determine what constitutes a "same offense." *Brown*, 432 U.S. at 165 ("The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments…."); *Garrett v. United States*, 471 U.S. 773, 778–79 (1985).

## A.  The *Blockburger* Test for Conspiracies Charged Under Different Statutes

Where the "same act or transaction constitutes a violation of two distinct statutory provisions," the Supreme Court has instructed courts to examine "whether each provision requires proof of an additional fact which the other does not" to determine if a defendant has been charged with multiplicitous counts. *Blockburger*, 284 U.S. at 304 (citing *Gavieres v. United States*, 202 U.S. 338, 341 (1911)). "The *Blockburger* test focuses on the statutory elements of each offense, not the actual evidence presented at trial." *United States v. Kimbrew*, 406 F.3d 1149, 1151–52 (9th Cir. 2005). If each statute "requires proof of a fact that the other does not, the *Blockburger*

test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Wahchumwah*, 710 F.3d 862, 869 (9th Cir. 2013) (quoting *Albernaz v. United States*, 450 U.S. 333, 338 (1981)).

With respect to conspiracy charges, the Supreme Court has held that the Double Jeopardy Clause is not violated when a defendant is punished separately for conspiracy to import marijuana and conspiracy to distribute marijuana, even though the defendant participated in only one conspiracy, the purpose of which was to import and distribute marijuana. *Albernaz*, 450 U.S. at 344. Two punishments are lawful when Congress intends separate punishments to be imposed for differing conspiracy charges. *See, e.g.*, *Kimbrew*, 406 F.3d at 1151 (applying *Blockburger*, conviction for conspiracy to commit mail and wire fraud under § 1349 and conspiracy to launder money under § 1956(h) did not violate double jeopardy because "the acts necessary to establish a conspiracy to commit mail and wire fraud will not necessarily also support a conviction or conspiracy to launder money, or vice versa"); *Arlt*, 252 F.3d at 1038–39 (conspiracy to violate drug laws and conspiracy to launder drug money were separate offenses); *United States v. Cuevas*, 847 F.2d 1417, 1429 (9th Cir. 1988) (drug conspiracy and conspiracy to fail to report export of currency obtained from the drug conspiracy were separate offenses).

**B. The *Arnold* Test for Conspiracies charged Under the Same Statute**

Although *Blockburger* provides the primary constitutional test used to determine whether two counts charge the same offense, the test presents a "functional inadequacy" when applied to multiple counts under the same conspiracy statute. *United States v. Bendis*, 681 F.2d 561, 565 (9th Cir. 1981). Thus, when multiple conspiracy charges are alleged under the same statute, the court evaluates the charges using the five-factor test the Ninth Circuit adopted in *Arnold v. United States*, 336 F.2d 347 (9th Cir. 1964). The *Arnold* test requires a comparison of: (1) the differences in the time periods covered by the alleged conspiracies, (2) the places where the conspiracies were alleged to occur, (3) the persons charged as co-conspirators, (4) the overt acts alleged to have been committed, and (5) the statutes alleged to have been violated. *United States v. Ziskin*, 360 F.3d 934, 944 (9th Cir. 2003) (quoting *United States v. Montgomery*, 150 F.3d 983, 990 (9th Cir. 1998)). "The defendant bears the burden of showing that the two conspiracies charged actually arise from

a single agreement." *Id.* at 943 (citing *Montgomery*, 150 F.3d at 990). To sustain a claim of double jeopardy, a defendant must demonstrate "that the two conspiracies are indistinguishable in law and in fact." *Id.* (quoting *Guzman*, 852 F.2d at 1120).

"Once the defendant makes an initial non-frivolous showing of double jeopardy, 'the government must tender to the court evidence indicating that separate conspiracies are charged'." *Id.* (quoting *Bendis*, 681 F.2d at 564). "Although 'this appears more properly characterized as a burden to go forward with the evidence, it may in practical effect amount to a burden to persuade the court'." *Id.* "The burden of proof, however, does not shift to the government and remains with the defendant." *Ziskin*, 360 F.3d at 943 (citing *Bendis*, 681 F.2d at 564).

No single factor of the *Arnold* analysis "controls the determination of whether there was a single conspiracy; after consideration of all, the question is whether there was more than one agreement." *Id.* at 944 (quoting *Guzman*, 852 F.2d at 1121). In addition, the " 'fact that there is some interrelationship between conspiracies does not necessarily make them the same criminal enterprise,' where one conspiracy involves unlawful transactions 'quite distinct in their means of execution and their objects'." *Ziskin*, 360 F.3d at 944 (quoting *Guzman*, 852 F.2d at 1121).

## II.    THE PARTIES' POSITIONS

### A.    Ritchie's Motion (ECF No. 111)

Mr. Ritchie' motion asks the court to "dismiss the charges against him" because this case constitutes a second prosecution in violation of the Double Jeopardy Clause. Mot. at 1. Ritchie asserts that he was convicted by a jury in the Eastern District of Virginia of "the same charge – a conspiracy to distribute a controlled substance analogue, XLR-11." *Id.* Ritchie claims the Virginia indictment alleged and the government presented evidence at trial of the following facts. Ritchie and Galecki operated Zencense from Pensacola, Florida. Prior to May 2012, Zencense mixed and dried the spice products in Pensacola. However, the drying worked better in a low-humidity location such as Nevada, rather than the high-humidity location of Pensacola. Between May 2012 and July 25, 2012, Zencense shipped ingredients to Nevada for spice products to be created. After the products were manufactured in Nevada, the products were shipped to Pensacola where they were sold through phone calls to and from owners of "smoke shops." The products were then sent

to retailers in Virginia and elsewhere.  Effective November 30, 2012, Ritchie and Galecki sold their interest in Zencense, and the business became known as ZenBio, LLC.  Around the same time, in December 2012, the Pensacola operation moved to Alabama.  Ritchie claims he had less to do with the business after the sale, but continued to receive money from the ongoing business.

Ritchie argues that the proof adduced in the Norfolk trial is very similar to the allegations in indictments in the Eastern District of Virginia, the Southern District of Alabama, and the District of Nevada.  He argues that an Alabama indictment targeted the "back office" aspect of the conspiracy, the Virginia prosecution targeted the sales aspect of the conspiracy, and the current Nevada prosecution is targeting the production aspect of the conspiracy.  He maintains that each indictment alleges "the same conspiracy, with overlapping or identical times, identical modes of operation, etc."  *Id*.  In each jurisdiction, the alleged conspiracies involve the operation of Zencense, the same players, and the same owner and co-owner—Ritchie and Galecki.  Thus, Ritchie argues that the government is seeking to break up one conspiracy into three parts, and then prosecute those parts in three different jurisdictions.

Citing relevant Supreme Court and Ninth Circuit case law, Ritchie asserts that the three prosecutions violate the Double Jeopardy Clause.  He notes that the Virginia case did not allege violations of misbranding statutes, but if XLR-11 is a controlled substance analogue, then he was "most likely violating the 'misbranding' statute, the money-laundering statute, and some of the other substantive counts in the 26-count indictment."  *Id*. at 6.  Ritchie testified that his business plan involved actions that are recognized as only one agreement.  Thus, he asks the court to hold that the "corporate activity was only one conspiracy, and that Mr. Ritchie cannot now be prosecuted a second time."  *Id*.

**B.  The Government's Response (ECF No. 113)**

In response, the government states that Ritchie's motion inaccurately portrays and compares his conspiracy conviction in Virginia with the prosecution in Nevada.  The government also asserts that Ritchie fails to carry his burden of showing that the Virginia distribution conspiracy and the Nevada conspiracies are indistinguishable in law and in fact.

First, the response argues that the motion fails to state the grounds on which it is based and

the relief or order sought.  The motion fails to specify which of the 26 charges in the Nevada indictment overlaps with which Virginia charge.  Instead, the motion's references to the "conspiracy" are vague and lacking citation to the Nevada Superseding Indictment.  In addition, the motion does not specifically address the facts alleged in the Nevada indictment or compare those allegations to those at issue in the Virginia distribution conspiracy.  Rather, the motion vaguely concludes that Ritchie's own testimony supports his claims.  In addition, the motion presents no legal analysis of the double jeopardy claim and simply includes large block quotes from relevant case law.  Without more specificity, neither the court nor the government can adequately conduct a legal analysis of the supposedly overlapping charges.  Thus, the motion should be summarily denied.

If the court conducts a fact-specific analysis, the *Arnold* factors demonstrate that the Virginia distribution conspiracy and the "Nevada narcotics conspiracies" (Counts One, Twenty, and Twenty-Two) are separate and independent.  The government argues that, when the facts of the Virginia distribution conspiracy are compared with those counts, the charges are dissimilar in the timeframe, the locations, the co-conspirators, the overt acts, and the statutes violated, and thus Ritchie is not subject to double jeopardy.

Taking the *Arnold* factors in turn, the government first points out that the timeframes of the conspiracies are different and the allegations only support a minor overlap, if any.  The Virginia distribution conspiracy charged Ritchie with conspiring to distribute spice within Virginia between "August 2012 and April 2013 *only*."  E.D. Va. Superseding Indict. at 6 (emphasis added).  Ritchie was also convicted of substantive distribution and possession with intent to distribute in Virginia, which began on or about August 28, 2012.  *Id*. at 12–13, Counts Seven & Eight.  The Nevada conspiracy charges allege conduct from on or about March 2012 to August 2012.  The government asserts that "the conspiratorial conduct had all but ceased" by the time the Virginia distribution conspiracy began because law enforcement shut down the Las Vegas warehouse on July 25, 2012.  Although the conspiracies were adjacent to each other in time, they cover discrete time periods.

As for location, the places where the government alleges the conspiracies occurred are distinct and do not overlap.  The Virginia distribution conspiracy relied solely on Ritchie's conduct

of distributing spice to several smoke shops in the Hampton Roads, Virginia, area. The Virginia indictment does not reference Nevada or the manufacturing conduct that occurred here. The Nevada indictment alleges conduct in the Las Vegas warehouse. The Nevada charges do not discuss Ritchie's conduct in Virginia. Thus, each indictment is specific enough to limit his liability to actions that occurred within each district.

Different persons are charged as co-conspirators in Nevada and Virginia, which reflects Ritchie's separate agreements in each district. Ritchie and Galecki were convicted of conspiring with Nadar Abdallah, Sharif Abdallah, and others who operated smoke shops in Virginia. The Virginia distribution conspiracy focused on Ritchie and Galecki's agreements with those individuals to *distribute* spice to end users. In contrast, the Nevada narcotics conspiracies allege that Ritchie, Galecki, and Eaton conspired to *manufacture* spice products in Las Vegas. *See* D. Nev. Superseding Indict. ¶¶ 8, 45, 49. Eaton was allegedly responsible for the manufacturing operation and is charged in the Nevada indictment, but he was not charged in Virginia and was not alleged to have involvement in the Virginia distribution conspiracy. Although Ritchie and Galecki were charged in both Virginia and Nevada, their roles in each conspiracy differed; thus, the limited overlap does not compel a finding of a single conspiracy.

With regard to the overt acts alleged, the government asserts that the conduct identified in the Virginia distribution conspiracy is entirely dissimilar from the Nevada narcotics conspiracies. The Virginia indictment alleged overt acts occurring between August 9, 2012, to April 11, 2013, including Zencense and Zenbio sending invoices to the smoke shops and the remittance of payment by the smoke shops. *See* E.D. Va. Superseding Indict. at 7–8. The government argues that none of the overt acts charged in Virginia are connected to Nevada. In addition, the overt acts alleged in the Nevada narcotics conspiracies all involve the promotion, maintenance, and supervising of narcotics manufacturing in Las Vegas between May 28, 2012, to July 25, 2012. *See* D. Nev. Superseding Indict. ¶¶ 7–13, 17, 45, 49. Different overt acts support separate conspiracies.

The last element of the *Arnold* test, the statutes alleged, also supports separate conspiracies because the indictments allege conduct under different statutes or parts of those statutes. In Virginia, Ritchie was convicted of, among other charges, conspiracy to distribute and possess with

intent to distribute a controlled substance and controlled substance analogue in violation of 21 U.S.C. §§ 802(6), 813, and 846. In Nevada, Ritchie is charged with Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(b), which contains a conspiratorial element, and with conspiracy to manufacture, possession with intent to distribute, and distribution of a controlled substance or controlled substance analogue in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 846. The charges both include violations on 21 U.S.C. § 841, which makes it illegal to "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." However, the Virginia distribution conspiracy invoked § 841's "distribute" clause to cover Ritchie's distribution of spice to smoke shop owners, while the Nevada narcotics conspiracies now invokes § 841's "manufacture" clause to cover the manufacturing of spice products at the Las Vegas warehouse. Thus, the charges do not exclusively involve the same provisions of the statute. Additionally, because "Congress intended separate punishments to be imposed" for "conspiracy to import [narcotics] and conspiracy to distribute [narcotics]," the Double Jeopardy Clause is not violated. *United States v. Arlt*, 252 F.3d 1032, 1035 (9th Cir. 2001). The government maintains that any overlap between the statutes is not exclusive or determinative given the analysis of the other *Arnold* factors.

Even if the court were to find that the Virginia distribution conspiracy and the Nevada narcotics conspiracies overlap, and thus violate the double jeopardy clause, the government argues that those charges are severable and Ritchie must still face trial on the remainder of the 26-count Superseding Indictment. Resp. at 15. The motion presented no argument regarding the other charges, and Ritchie has failed to show why his Virginia conviction would have "any impact on the unrelated conspiracies, let alone the substantive charges arising out of his criminal conduct in Nevada." *Id*. at 15–16.

### C. Ritchie's Reply (ECF No. 114) and Addendum (ECF No. 115)

In his Reply, Ritchie states that the government's analytical mistake is its assertion that either the Virginia or Nevada indictments completely describe the Florida-based Zencense conspiracy. However, each indictment describes only a part of Zencense's Florida-based activities. Relying on the Jain parable of the blind men describing an elephant, Ritchie argues that

1    the government's piecemeal prosecution in multiple districts is impermissible because it "is all one

2    conspiracy." Reply at 2.

3         The reply provides a list of proof presented in the Virginia trial, without citation.[1]    The

4    government provided proof that defendants conspired through their company, Zencense, to

5    distribute spice throughout the country.  Their agreement began in 2011 and lasted until April

6    2013.  Defendants manufactured spice products in Florida in 2011 and early 2012, when they

7    decided to move their manufacturing operation to Nevada.  After the Nevada operation was closed

8    down on July 25, 2012, Zencense continued to produce spice in Florida until another operation

9    could be opened in California in October 2012.  The method of operation and products produced

10   were identical, whether the manufacturing was taking place in Nevada, Florida, or California.

11        Based on the evidence in the Virginia trial, Ritchie asserts that the government proved he

12   "operated Zencense in Florida, Nevada, and California, that the products sold were the same from

13   at least May, 2012, through April, 2013, that the methods were the same, and that the players were

14   basically the same." Reply at 4.  Thus, the Virginia and Nevada indictments and the 2015 civil

15   forfeiture complaint "all describe one conspiracy that lasted from 2010 until April, 2013. To

16   continue the Jain parable, this is the elephant." *Id*. at 5.  The Virginia indictment describes an

17   agreement to manufacture and distribute products containing XLR-11 by shipping the raw

18   materials across the country, shipping the manufactured product across the country, using the

19   instrumentalities of interstate commerce to communicate in furtherance of their agreement, and re-

20   investing the profits.  *Id*.  The Nevada indictment describes the same agreement, but the

21   government charged separate conspiracies rather than attribute the mail fraud and wire fraud to the

22

23   [1]  Attached as exhibits to the Reply is a 1,670-page transcript of Ritchie's October 2016 trial in Virginia,
     which resulted in a hung jury.  *See* Reply Exhibits 2–10 (ECF Nos. 114-2 to 114-10).  The Reply indicates
     that a transcript of the January 2017 trial, which resulted in Ritchie's conviction, was not yet available.  An
24   Addendum (ECF No. 115) was subsequently filed submitting an additional two days and 323 pages of trial
     transcripts.  In sum, Ritchie submitted approximately 2,000 pages of transcripts, but failed to make any
25   citations to the record.  Because the evidence admitted and legal theories advanced in the October 2016
     trial may not be the same as the January 2017 trial that resulted in Ritchie's conviction, the transcripts
26   submitted are not germane to the current motion.  But even if they were, parties are required to make specific
     citations to the record to support their arguments. *See, e.g.*, *Indep. Towers of Wash. v. Wash.*, 350 F.3d
27   925, 929 (9th Cir. 2003) ("judges are not like pigs, hunting for truffles buried in briefs").  Filing voluminous
     transcripts and exhibits without citation will not help a defendant meet his burden of a "non-frivolous
28   showing of double jeopardy." *Cf. Ziskin*, 360 F.3d at 943.

broad conspiracy. Ritchie argues that the effect is the same and Counts 1, 2, 3, 8, 9, 14, 20, 22 of the Nevada indictment and the forfeiture allegations all describe different parts of the broad conspiracy. Thus, each are barred by the Double Jeopardy Clause.

Ritchie claims that the Virginia and Nevada conspiracy charges are indistinguishable in law and fact. The objective of the conspiracy was to "manufacture and sell" spice. Citing *Braverman*, Ritchie argues that the wire fraud, mail fraud, and money-laundering counts "do not describe the overall objective of the conspiracy – they describe 'a variety of functions to achieve the objectives of the conspiracy'." Reply at 9 (internal citation not identified). Ritchie's agreement was to manufacture and distribute spice; therefore, it encompassed sending the products through the mail (mail fraud), using the instrumentalities of interstate commerce to communicate with their coworkers and customers (wire fraud), and reinvesting their profits (money laundering). *Id*. All of his 2012 and 2013 activity was pursuant to one agreement.

The reply asserts that the *Arnold* factors demonstrate a single conspiracy. The time periods of the illegal activity, as proven in Virginia, stretched from 2011 to 2013. *Id*. at 10–12. The Nevada indictment alleges illegal conduct between March and August 2012; however, it also describes conduct in Florida in 2010. The substantive distribution counts in the Virginia indictment alleged conduct beginning from February 2012. The conduct alleged in the Nevada and Virginia indictments overlap because both allege illegal activity in August 2012. When viewed as a whole, the Nevada allegations represent a short part of the larger conspiracy.

With regard to location, Ritchie argues that the conspiracy was always based in Florida. Whether defendants manufactured the product in Nevada, California, or Florida, or made sales to Virginia, Oregon, or Wisconsin, the product was sold and shipped from Florida. Thus, the conspiracy was based in Florida.

Although different persons were charged as co-conspirators in Nevada and Virginia, Ritchie and Galecki were charged in both states. The government seeks to distinguish the co-conspirators based on distributing spice in Virginia to Virginians and manufacturing in Nevada with a person located in Nevada. However, Ritchie argues that the government's logic would impermissibly allow prosecutors to break up an indictment into little pieces; thus, "an indictment

alleging that the same two people agreed to sell in 10 different states would permit charges to be brought in U.S. District Court in each of those 10 states." *Id*. at 14. Such an approach would violate *Bendis*' prohibition of artful crafting of conspiracy charges and subdivide one criminal conspiracy into multiple violations of a single statute.

As for overt acts, Ritchie asserts that both indictments allege an agreement to conduct the same drug manufacturing and distribution operation. Both indictments allege wire fraud, mail fraud, and distribution of a controlled substance analogue. Thus, the government is asking the court to ignore the principle discussed in *Braverman* and *Bendis*.

With respect to the statutes involved, Ritchie argues that both indictments allege "a conspiracy to manufacture and distribute" spice. *Id*. at 15. The Nevada indictment goes even further by alleging a continuing criminal enterprise ("CCE"), "though there is legally no distinction because the conspiracy is a lesser-included offense of the CCE." Because Ritchie was already found guilty of the Virginia conspiracy, he cannot now be prosecuted for the CCE.

The other conspiracy charges are also barred by the Virginia conviction. Ritchie asserts that defendants "could have been found guilty of each of the conspiracies alleged – a conspiracy to distribute, a conspiracy to engage in mail fraud, a conspiracy to engage in wire fraud, and a conspiracy to engage in money laundering" if the Nevada charges had gone to trial first. *Id*. at 15. But if the Nevada charges only alleged a conspiracy to distribute and defendants were convicted, "the Double Jeopardy Clause would not permit a second indictment and a second trial alleging the additional conspiracies to engage in mail fraud, etc." *Id*. Ritchie concedes that the Virginia conspiracy conviction does not bar the substantive mail fraud, wire fraud, and money laundering counts, but he claims that it bars a second trial on the other conspiracy counts. *Id*. at 15–16.

Ritchie concludes that the government is hiding behind a fiction that three different agreements existed because there was conduct in three different jurisdictions. The government synchronized three prosecutions to impermissibly divide up the charges against him in three different indictments. Because Ritchie's conduct grew out of "one essential agreement," the court should dismiss all of the conspiracy counts and the CCE count: Counts One, Two, Three, Eight, Nine, Fourteen, Twenty, and Twenty-Two of the Nevada indictment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    ANALYSIS

The conclusory, six-page motion does not argue that the Nevada indictment is multiplicitous, or that the current substantive charges violate double jeopardy based on his Virginia conviction for substantive narcotics charges.[2]  As the government pointed out in its response, the Ritchie's motion did not specify which of the 26 Nevada charges violates the Double Jeopardy Clause with respect to which of the seven Virginia charges.  Ritchie vaguely referred to the "conspiracy," without citation to or analysis of the specific allegations and charges in the Nevada indictment.  Although the arguments in Ritchie's moving papers appear to shift, the reply specifically asks the court to "hold that the Virginia and Nevada conspiracy indictments allege the same conspiracy." Reply at 18.  As a result, the court's analysis is confined to whether the Virginia distribution conspiracy overlaps with the Nevada conspiracy counts, including the CCE count.

### A.  Other Conspiracy and CCE Counts

In this case, Ritchie is charged with multiple conspiracy counts alleging violations of different conspiracy statutes than the statute charged in the Virginia distribution conspiracy.  He is charged with conspiracy to engage in financial transactions to promote unlawful activity in violation of 18 U.S.C. § 1956(h); conspiracy to transport funds to promote unlawful activity in violation of 18 U.S.C. § 1956(h); conspiracy to launder money instruments in violation of 18 U.S.C. § 1956(h); conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.  *See* D. Nev. Superseding Indict. at Counts 2, 3, 8, 9, 14, ¶¶ 18–21, 24–30, 35–39.  Because these statutes are different than statutes at issue in the Virginia distribution conspiracy, 21 U.S.C. §§ 802(6), 813, and 846, the court applies the *Blockburger* test.  *See Bendis*, 681 F.2d at 565 ("Charges under distinct conspiracy statutes bring into consideration questions of Congress' broad power to define offenses…. Charges under

---

[2]  In fact, Ritchie concedes that he could have been found guilty of the Nevada conspiracies to distribute, engage in mail fraud, engage in wire fraud, and engage in money laundering, provided that the Nevada charges had gone to trial first.  *See* Reply at 15.  His arguments appear to hinge on timing—once the government tried him in Virginia for conduct related to Zencense, it could not do so again.  As explained in this report and recommendation, he is simply wrong.  This argument also conflicts with his additional concession that the Virginia conspiracy conviction does not bar the substantive mail fraud, wire fraud, and money laundering counts alleged in the Nevada indictment.

1   the same statute implicate the *Braverman* rule against subdividing one conspiracy.").

2       Ritchie argues that argues that the government is impermissibly breaking up his charges

3   into pieces.  However, Supreme Court precedent clearly holds that Congress may create separate

4   punishments for differing conspiracy charges.  *Albernaz*, 450 U.S. at 344.  Although the Virginia

5   and Nevada conspiracies may concern the same or similar underlying conduct, the conspiracies

6   are "legally distinct" and each require "proof of something the other does not."  *See Kimbrew*, 406

7   F.3d at 1152.  As such, prosecuting Ritchie for conspiracy Counts Two, Three, Eight, Nine, and

8   Fourteen does not violate double jeopardy based on Ritchie's Virginia conspiracy conviction.

9       Ritchie's arguments also fail with respect to the CCE charge, Count One.  To prove that a

10  defendant is engaged in a continuing criminal enterprise or CCE, the government must factually

11  establish that: (1) the defendant's conduct constituted a felony violation of federal narcotics law;

12  (2) the described conduct occurred as part of a continuing series of violations of federal narcotics

13  law; (3) the defendant undertook the activity in concert with five or more persons; (4) the defendant

14  acted as the organizer, supervisor, or manager of the criminal enterprise; and (5) the defendant

15  obtained substantial income or resources from the purported enterprise.  *Ziskin*, 360 F.3d at 948

16  (citing *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1570 (9th Cir. 1989)).  As to the

17  second element, the Ninth Circuit has interpreted the term "continuing series" to require the

18  government to prove the defendant committed three or more federal narcotics violations.  *Id.*  "The

19  government may use any type of drug violation as a predicate offense, including drug conspiracy

20  charges that cover periods within the life of the CCE."  *Ziskin*, 360 F.3d at 948 (citing *Hernandez-*

21  *Escarsega*, 886 F.2d at 1571).

22      None of the five predicate narcotics offenses identified in the CCE count of the Nevada

23  indictment is a conspiracy charge.[3]  Rather, each count is a *substantive* violation of federal

24

25  _____

[3] The CCE charge at Count One includes, but is not limited to, the following continuing series of violations: Count Twenty-One (possession with intent to distribute a controlled substance and a controlled substance analog to the extent intended for human consumption in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2); Count Twenty-Three (manufacture a controlled substance analogue to the extent intended for human consumption in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2); Count Twenty-Four (distribution of a controlled substance analogue in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2); Count Twenty-Five (maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2); and

26

27

28

narcotics law.  The CCE count, therefore, does not allege the Virginia distribution conspiracy as a predicate offense and it does not violate the Double Jeopardy Clause.

Accordingly, the court will recommend that Richie's motion be denied with respect to Counts One, Two, Three, Eight, Nine, and Fourteen.

**B.  The Conspiracies Charged Under § 841**

Because two of the conspiracy charges in the Nevada indictment, Counts Twenty and Twenty-Two, involve the same statute as the Virginia conspiracy charge, 18 U.S.C. § 841, the court applies the *Arnold* test.

1.  Time Period

The timeframes of the Nevada and Virginia conspiracies are not the same.  The Virginia distribution conspiracy charged Ritchie with conspiring to distribute spice between to "August 2012 and April 2013 *only*."  Resp. Ex. 3 (ECF No. 113-3), E.D. Va. Superseding Indict. at 6 (emphasis added).  Although Ritchie alleges that the time period of illegal activity, as proven in Virginia, stretched from 2011 to 2013, the indictment expressly limited the time period for the Virginia distribution conspiracy to an eight-month period.  Thus, the charge is not fairly interpreted as stretching from 2011 to 2013.  Broadly read, the allegations could overlap in August 2012 since the Nevada charges allege illegal conduct from March 2012 to August 2012.  The government argues that, because the Las Vegas warehouse was shut down by law enforcement on July 25, 2012, the conspiratorial conduct in Nevada had all but ceased by the time the Virginia distribution conspiracy began.  The Virginia indictment alleged that Ritchie, through Zencense and Zenbio, sent numerous invoices for spice to smoke shops between August 9, 2012, and April 11, 2013. Examining the allegations in the Nevada and Virginia as a whole, the timing suggests that each indictment covers a distinct timeframe and different conspiracies are charged in each state.

2.  Location

The locations of the Virginia distribution conspiracy and the Nevada conspiracies are patently distinct.  The Virginia indictment alleged conduct in Hampton Roads, Virginia, while the

Count Twenty-Six (possession of a listed chemical with the intent to manufacture a controlled substance analogue intended for human consumption in violation of 21 U.S.C. § 841(c) and 18 U.S.C. § 2).

Nevada indictment alleges conduct in Las Vegas. The indictments do not reference the other state or conduct therein. This factor strongly supports different conspiracies.

### 3. Co-Conspirators

With the exception of Ritchie and Galecki, the Nevada and Virginia indictments charge different persons as co-conspirators in Virginia (*i.e.*, Nadar Abdallah, Sharif Abdallah, and others who operated smoke shops in the Hampton Roads area) and Nevada (*i.e.*, Eaton who manufactured spice in Las Vegas). The indictments distinguish these individuals by their roles and the goals of the conspiracies. The Abdallahs operated smoke shops in the Hampton Roads area and the Virginia distribution conspiracy focused on an agreement to *distribute* spice to end users. In contrast, Eaton was allegedly responsible for the manufacturing operation and the Nevada conspiracies allege a conspiracy to *manufacture* spice products in the Las Vegas warehouse.

Both Ritchie and Galecki were charged in Nevada and Virginia; however, they are the only overlapping co-conspirators. The Ninth Circuit has held that the involvement of identical conspirators in two conspiracies does not compel a finding that a single conspiracy existed. *Ziskin*, 360 F.3d at 946. Rather, the court "must determine whether the roles performed by the overlapping members were different in each conspiracy." *Id*.; *see also Montgomery*, 150 F.3d at 991; *Guzman*, 852 F.2d at 1120. The Virginia indictment alleged that Ritchie and his co-defendants conspired to distribute spice products to the public through smoke shops in the Hampton Roads area. Through Zencense and Zenbio, Ritchie produced private blends of spice for Virginia smoke shops, sent numerous invoices for spice products to Virginia smoke shops, and shipped spice products to Virginia smoke shops for retail sale. The Nevada indictment alleges that Ritchie leased a warehouse in Las Vegas to manufacture spice. He and his co-conspirators manufactured up to 200 kilograms per week in Las Vegas. Ritchie deposited proceeds from the spice manufacturing into a business bank account and then withdrew and transferred funds from that account. Although Ritchie and Galecki were charged in both Virginia and Nevada, the court finds that their roles and functions in each conspiracy differed. Thus, the overlap does not compel a finding of a single conspiracy, and this element of the *Arnold* test tips in favor of multiple conspiracies.

/ / /

### 4. Overt Acts

The overt acts alleged in Nevada and Virginia are not the same. The Virginia indictment alleged overt acts including sending invoices to Virginia smoke shops and the remittance of payment by the smoke shops. *See* E.D. Va. Superseding Indict. at 7–8. The Nevada narcotics conspiracies allege overt acts involving the promotion, maintenance, and supervision of the narcotics manufacturing operation in Las Vegas. *See* D. Nev. Superseding Indict. ¶¶ 7–13, 17, 45, 49. None of the overt acts alleged in Virginia distribution conspiracy are repeated in the Nevada conspiracies. The differences in the overt acts support a finding of separate conspiracies.

### 5. Statutes Violated

When two conspiracies charges violate the same statute, the court considers " 'whether the goals of the two conspiracies were similar'." *Ziskin*, 360 F.3d at 947 (quoting *Montgomery*, 150 F.3d at 991). "Different goals suggest the existence of two distinct conspiracies." *Id.* (citing *United States v. Stoddard*, 111 F.3d 1450, 1456 (9th Cir. 1997) (finding that the existence of two conspiracies is indicated where one conspiracy's goal was the purchase of marijuana and the other conspiracy's goal was the growth, sale and distribution of marijuana); *Guzman*, 852 F.2d at 1121 (finding that the goal of one conspiracy to distribute cocaine differed from the goal of the other conspiracy to manufacture cocaine)).

Although the Virginia distribution conspiracy and the Nevada conspiracies involve the same statutes, the goals of the conspiracies were distinct. The Virginia indictment charged Ritchie in a conspiracy to distribute and possess with intent to distribute a controlled substance and controlled substance analogue in violation of 21 U.S.C. §§ 802(6), 813, and 846. In Nevada, Ritchie is charged with conspiracy to manufacture, possession with intent to distribute, and distribution of a controlled substance or controlled substance analogue in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 846. The charged statutes are not identical, but the Nevada and Virginia indictments both include violations on 21 U.S.C. § 841, which makes it illegal to "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." However, the Virginia distribution conspiracy invoked § 841's *distribution* language and alleged a goal of distributing spice to smoke shops and end users,

20

while the Nevada conspiracies invokes § 841's *manufacturing* language and alleges a goal of manufacturing spice products at the Las Vegas warehouse.  Thus, the charges do not exclusively involve identical statutory provisions and they do not share the same goal.  The last element of the *Arnold* test further supports separate conspiracies.

Ritchie's argues that he and his co-defendants conspired to manufacture and distribute spice throughout the country.  He contends that because the products, operation methods, and players were basically the same, his conduct should be viewed as one agreement with one objective.  However, his argument overlooks Congress' authority to enact multiple punishments arising out of a single act or transaction without violating the Double Jeopardy clause.  *See, e.g.*, *Brown*, 432 U.S. at 165; *Garrett*, 471 U.S. at 778–79; *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008).  Even when the same conduct forms the basis of two charges or there is "substantial overlap" between two crimes, double jeopardy does not necessarily preclude them from being separate offenses.  *Arlt*, 252 F.3d at 1035 (citing *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975); *United States v. Dixon*, 509 U.S. 688, 703–04 (1993)).

The court finds that the *Arnold* test militates in favor of separate conspiracies.  Ritchie has failed to meet his burden of showing that the conspiracies are indistinguishable in law and fact.  Accordingly, the court will also recommend that the motion be denied as to Counts Twenty and Twenty-Two.

For the reasons explained,

**IT IS RECOMMENDED:** Charles Burton Ritchie's Motion to Dismiss (ECF No. 111) be DENIED.

Dated this 12th day of July, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE