UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br>BENJAMIN GALECKI,<br><br>Defendant. | Case No. 2:15-cr-00285-APG-PAL<br><br>**ORDER**<br><br>(Mot. Specific Discovery – ECF No. 155;<br>Mots. Joinder – ECF Nos. 158, 165) |

Before the court is Defendant Benjamin Galecki's Motion for Specific Discovery (ECF No. 155). This Motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice. The court has considered the Motion, the Government's Response (ECF No. 185), and Ritchie's Reply (ECF No. 200), as well as co-defendants Charles Burton Ritchie and Ryan Matthew Eaton's Motions for Joinder (ECF Nos. 158, 165).

## **BACKGROUND**

This case involves the government's allegations that Galecki and his co-defendants manufactured and distributed controlled substances and controlled substance analogues ("analogues"), committed mail and wire fraud, and engaged in illegal financial transactions with the proceeds from their drug operations. Supers'g Indict. (ECF No. 56). The defendants' "smokable synthetic cannabinoid products" (*i.e.*, "spice") contained the alleged analogues and controlled substances XLR11 a/k/a 5F-UR-144 ("XLR11") and AM2201. *Id.* ¶¶ 3, 10.[1] As relevant to the current motion, defendants are charged in seven counts alleging violations of the

---

[1] Galecki and Ritchie were also charged with analogue offenses in the Eastern District of Virginia and Southern District of Alabama. *See United States v. Ritchie, et al.*, Case No. 4:15-cr-0018-RAJ-LRL (E.D. Va.); *United States v. Ritchie, et al.*, Case No. 1:15-cr-00227-WS-C (S.D. Ala.). In January 2017, a Virginia jury found Galecki and Ritchie guilty on all counts related to distribution of spice. However, the Fourth Circuit recently vacated the convictions and remanded for further proceedings. *United States v. Ritchie, et al.*, No. 17-4357, 2018 WL 2383017 (4th Cir. May 25, 2018).

Controlled Substance Act, 21 U.S.C. §§ 801–971, and the Controlled Substance Analogue Enforcement Act ("Analogue Act"), 21 U.S.C. § 813:

- Count Twenty – Conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance and a controlled substance analogue to the extent intended for human consumption in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.
- Count Twenty-One – Possession with intent to distribute a controlled substance and a controlled substance analog to the extent intended for human consumption in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.
- Count Twenty-Two – Conspiracy to manufacture, possess with intent to distribute, and distribute a controlled substance analogue intended for human consumption in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C) and 846.
- Count Twenty-Three – Manufacture a controlled substance analogue to the extent intended for human consumption in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2.
- Count Twenty-Four – Distribution of a controlled substance analogue in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2.
- Count Twenty-Five – Maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.
- Count Twenty-Six – Possession of a listed chemical with the intent to manufacture a controlled substance analogue intended for human consumption in violation of 21 U.S.C. § 841(c) and 18 U.S.C. § 2.

The trial in this case is currently set for October 29, 2018. Order (ECF No. 174).

## DISCUSSION

I. **LEGAL STANDARDS**

As a general rule, a defendant has no constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case."). However, the Supreme Court has held that the prosecution has a constitutional duty under the due process clause to disclose material exculpatory information, including evidence bearing on the credibility of government witnesses. *E.g.*, *Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963). Additionally, a defendant is entitled to limited discovery under the Jencks Act, 18 U.S.C. § 3500, and Rules 12.1, 16, and 26.2 of the Federal Rules of Criminal Procedure.[2]

---

[2] All references to a "Rule" or "Rules" in this order refer to the Federal Rules of Criminal Procedure.

## A. The Government's Constitutional Duty of Disclosure

In *Brady v. Maryland*, the Supreme Court held that the Due Process Clause requires the government to disclose upon request "evidence favorable to an accused" where the evidence is "material either to guilt or punishment." 373 U.S. at 87. The Supreme Court later held that the government has a duty to disclose material favorable information even in the absence of a defense request. *Bagley*, 473 U.S. at 682; *Kyles*, 514 U.S. at 433.[3] "Any evidence that would tend to call the government's case into doubt is favorable," *i.e.*, exculpatory. *Milke v. Ryan*, 711 F.3d, 998, 1012 (9th Cir. 2013). *Giglio* extended the government's disclosure obligation to impeachment evidence. 405 U.S. at 154–55. A witness' prior statements that are both material and inconsistent with anticipated trial testimony are *Brady* material. *United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir. 1995). Evidence impugning the testimony of a witness critical to the prosecution's case "is especially likely to be material" for *Brady* purposes. *United States v. Sedaghaty*, 728 F.3d 885, 902 (9th Cir. 2013). Disclosure of *Brady* material should generally occur before trial. *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1988). It must be made at a time when it would be of value to the accused. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991).

*Brady* and *Giglio* impose obligations not only on the prosecutor, but on the government as a whole. *United States v. Blanco*, 392 F.3d 382, 394 (9th Cir. 2004). Thus, a prosecutor is deemed to have knowledge of and access to any *Brady* and *Giglio* material in the possession, custody, or control of any federal agency participating in the same investigation of the defendant. *United States v. Ross*, 372 F.3d 1097, 1111 (9th Cir. 2004). As such, the prosecutor is required to turn over exculpatory evidence that is known to an investigating agency, even if the prosecutor does

---

[3] For purposes of appellate review, evidence is material "if a 'reasonable probability' exists that the result of a proceeding would have been different had the government disclosed the information to the defense." *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) (citing *Bagley*, 473 U.S. at 682). "A reasonable probability is one that is 'sufficient to undermine confidence in the outcome' of either the defendant's guilty plea or trial." *Id*. The Ninth Circuit has favorably cited two district court opinions finding that the *Brady* materiality standard should not be applied to pretrial discovery. *United States v. Price*, 566 F.3d 900, 912–13 n.14 (9th Cir. 2009) (citing *United States v. Acosta*, 357 F. Supp. 2d 1228, 1239–40 (D. Nev. 2005); *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999)). Rather, the proper test for pretrial disclosure of exculpatory evidence is whether the evidence is favorable to the defense. *Id*. This test is largely consistent with the Ninth Circuit's interpretation of materiality under Rule 16. *See, e.g.*, *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (materiality under Rule 16 is a "low threshold" and it is satisfied so long as the information will help prepare a defense) (internal quotation omitted).

not possess the information. *Blanco*, 392 F.3d at 394. This is because the "prosecution is in a unique position to obtain information known to other agents of the government." *Id*. at 388 (quoting *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997)).

The government's disclosure obligations under *Brady* and *Giglio* apply only to material and favorable evidence. *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (noting that "the Constitution does not require the prosecutor to share all useful information with the defendant"). Although *Brady* should be interpreted broadly to encourage prosecutors to carry out their constitutional disclosure duties, it does not require the government to disclose every scrap of evidence that could conceivably benefit a defendant. *Moore v. Illinois*, 408 U.S. 786, 795 (1972). The defendant is not entitled "to know about information which would help solidify the government's case." *United States v. Barker*, 988 F.2d 77, 79 (9th Cir. 1993).

The government has the responsibility to make judgment calls about what qualifies as "favorable evidence" subject to disclosure under *Brady* and its progeny, and whether certain evidence is "favorable" depends on the context of the existing or potential evidentiary record. *Kyles*, 514 U.S. at 439. The prosecutor's decision is final. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). However, the Supreme Court has cautioned the government not to "tac[k] too close to the wind." *Kyles*, 514 U.S. at 439. The prosecutors are representative of the government whose interest in a criminal prosecution is "not that it shall win a case, but that justice shall be done." *Id*. (internal quotation omitted). Therefore, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Id*.; *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016).

**B. Rule 16**

Rule 16 gives criminal defendants a limited right to discovery and requires the government to disclose, upon request, information within the government's possession, custody, or control that is material to preparing a defense. *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2013) (quoting Fed. R. Crim. P. 16(a)(1)(E)(i)). Rule 16 requires disclosure of information that, although not exculpatory or impeaching, may be relevant to developing a possible defense. *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). Thus, the rule imposes broader disclosure obligations on the government than *Brady*. *Id*. The government's obligations under Rule 16 also

4

impose a continuing duty to disclose evidence prior to or during trial. *United States v. Mikaelian*, 168 F.3d, 380, 389 (9th. Cir. 1999). However, the Advisory Committee's note to the 1975 amendments to Rule 16 make it clear that "the rule is intended to prescribe the minimum amount of discovery to which the parties are entitled."

Effective December 1, 2013, Rule 16(a)(2) was amended to correct a "scrivener's error" and clarify information that is not subject to disclosure. Notably, discovery or inspection of reports, memoranda or other internal government documents made by a government attorney or other government agent investigating or prosecuting the case are not discoverable, except as permitted in Rule 16(a)(1)(A) through (D), (F) and (G). Fed. R. Crim. P. 16(a)(2). The rule also clarifies that statements made by prospective government witnesses are not discoverable except as provided in the Jencks Act. *Id*.

**C. The Jencks Act and Rule 26.2**

The Jencks Act, 18 U.S.C. § 3500, governs demands for production of statements and reports of witnesses. It requires the government to produce all prior relevant statements of a witness *after* the government has called the witness to testify on direct examination:

> *After a witness called by the United States has testified on direct examination*, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified….

18 U.S.C. § 3500(b) (emphasis added).

The Ninth Circuit has observed that Rule 26.2 "basically implements the Jencks Act." *See United States v. Riley*, 189 F.3d 802, 805 (9th Cir. 1999). It provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Fed. R. Crim. P. 26.2. Like the Jencks Act, Rule 26.2 creates no right to production of witness statements until after the witness has testified on direct examination. 2A *Fed. Prac. & Proc. Crim.* § 438. The rule does not allow production to be compelled before completion of the direct testimony. *Id.*; *see also* Fed. R. Crim. P. 17(h).

**D. Motion to Compel Discovery**

Under Rule 16, a defendant may request to inspect any documents, data, other tangible objects, places, etc., if the item is in the government's possession, custody, or control and: (1) the item is material to preparing the defense; (2) the government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E). A defendant must make a "threshold showing of materiality," which requires him to present evidence tending to show: (i) the "Government is in possession of information," and (ii) the information is "helpful to the defense." *United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013) (quoting *Stever*, 603 F.3d at 752). Materiality is a "low threshold" and it is satisfied so long as the information will help prepare a defense. *Soto-Zuniga*, 837 F.3d at 1003 (quoting *United States v. Hernandez–Meza*, 720 F.3d 760, 768 (9th Cir. 2013)). However, conclusory allegations of materiality or general descriptions of the information sought are insufficient. *Muniz-Jaquez*, 718 F.3d at 1184. Furthermore, a defendant must create an inference that the requested materials exist since the court cannot compel the government to produce nonexistent materials. *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1181–82 (9th Cir. 2015) (citing *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); Fed. R. Crim. P. 16(a)(1)(E)).

"Information that is not exculpatory or impeaching may still be relevant to developing a possible defense." *Muniz-Jaquez*, 718 F.3d at 1183. "Even inculpatory evidence may be relevant. A defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy. Or he can seek a plea agreement instead of going to trial." *Id.*; *Hernandez–Meza*, 720 F.3d at 768 ("Information is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path."). Additionally, the test for compelling discovery does not address admissibility at trial. *Soto-Zuniga*, 837 F.3d at 1003. Instead, the court looks to whether the discovery may assist the defendant in formulating a defense, including leading to admissible evidence. *Id.*

**II. THE PARTIES' POSITIONS**

Mr. Galecki's motion seeks an order compelling the government to produce 13 specific discovery requests. The government agreed to provide certain documents in response to Request

Nos. 2, 5, 6, 7, and 8. The court will enforce the government's agreement, and this order will address the merits of the remaining eight requests. Most of the requests involve the Drug Enforcement Agency (DEA) and two of its internal departments, or what the DEA refers to as its "components." To efficiently address the parties' arguments, a short introduction is appropriate.

The motion argues that scientists in two DEA components, (1) the Office of Diversion Control, Drug and Chemical Evaluation Section ("Drug Evaluation") and (2) the Operational Support Division, Office of Forensic Sciences ("Forensic Science"), disagreed about the structural similarity of certain substances to controlled substances. Drug Evaluation and Forensic Science are distinct DEA components with unique roles. Resp. at 4; Reply Ex. 13 (ECF No. 200-2), DEA Alert Regarding Discovery Issue at 4. Drug Evaluation employs pharmacologists as well as non-chemists to opine on whether a substance meets scientific criteria for the DEA to treat it as an analogue, while Forensic Science employs forensic chemists who specialize in identifying unknown substances. *Id.*

In 2012, Drug Evaluation asked Forensic Science to provide comment regarding the structural similarity of certain substances, including UR-144, to the controlled substance JWH-018. *See* Mot. Exs. 6–7 (ECF Nos. 175-3, 175-4). At the time Dr. Arthur Berrier was employed as a Senior Research Chemist with Forensic Science. *Id.* Berrier agreed with Drug evaluation's assessment of the structural similarity of two substances, but opined that UR-144 was not substantially similar in structure to JWH-018. Reply Ex. 13 (ECF No. 200-2). Since then Dr. Berrier's opinion and the related DEA communications have been the subject of considerable motion practice in federal analogue prosecutions involving UR-144 and XLR11. *See, e.g.*, *United States v. Singh-Sidhu*, No. 3:13-cr-00032-RCJ-VPC, 2017 WL 3610611 (D. Nev. Aug. 22, 2017); *United States v. Stockton*, Case No. 13-cr-571-MCA, 2015 WL 13662858 (D.N.M. June 1, 2015).

Galecki's motion refers to Drug Evaluation by its former name and the acronym "ODE." The government's response indicates that Drug Evaluation is now known as the "Drug and Chemical Evaluation Section" and refers to it as "DRE." *See* Resp. (ECF No. 185) at 3 n.2. The reply uses the acronyms ODE and DRE and the abbreviation "Diversion Control" interchangeably. *See* ECF No. 200 at 2 n.1. Given the numerous chemical abbreviations and dueling acronyms

addressed in the briefs, the court will refer to this DEA component as "Drug Evaluation" in this order to minimize confusion.

The discovery remaining in dispute are Request Nos. 1, 3, 4, 9, 10, 11, 12, and 13:

1. The workplace address of David Rees if still an employee of DEA and his list of substances that [Drug Evaluation] determined to be analogues without input from Forensic Science. If not employed by DEA, provide his identity and last known residential address. …

3. All opinions by Dr. Berrier as to the structural similarity of XLR11 or AM2201 to JWH-018 or to UR-144, however memorialized.

4. The written protocol, guidelines, policy, process by which DEA determines the chemical structural similarity of a substance to a controlled substance, including guidelines and policy it uses to make that determination, and whether that determination is independently made in each case involving the same substance, or whether a prior determination by DEA that a chemical structure is substantially similar to a controlled substance is sufficient for use in later cases. …

9. All cases in which S.A. Cosey testified concerning any company listed in the second amended indictment, regardless of where that testimony took place. If that testimony has been transcribed, and is in the possession of a U.S. Attorney or his agent, provide a copy of the transcript. …

10. The publication in the Federal Register, or citation thereto, that UR-144, 5F-UR-144 (XLR11), and AM2201 were analogues of controlled substances to the extent used for human consumption.

11. The decision of DEA [Drug Evaluation] to consult or not to consult with DEA Forensic Science chemists on whether XLR11 or AM2201 is chemically substantially similar in structure to JWH-018, and any e-mail, correspondence, memoranda concerning that decision.

12. The grand jury testimony of witnesses who testified to the determination that XLR11 and AM2201 are each chemically structurally similar to JWH-018 (or any other controlled substance) and the basis for that decision. …

13. The grand jury testimony of witnesses who testified to defendant's knowledge that AM2201 and XLR11 were being used and that defendant knew that they were controlled substances under the Analogue Act.

Mot. at 3–6.

**A. Galecki's Motion**

The motion asserts that this entire case boils down to whether the substances at issue are analogues and whether the defendants had the required criminal mens rea. Galecki contends his discovery requests are specifically tailored to these issues, seek information material to his defense, and must be obtained prior to trial.

First, the motion argues that Drug Evaluation failed to obtain a second opinion from Forensic Science, as it had done for the similar substance UR-144, because Drug Evaluation feared

8

that Forensic Science would disagree that XLR11 was an analogue, as Forensic Science had done with UR-144. Galecki claims the defendants were in regular contact with the DEA and requested an opinion from the DEA that XLR11 was legal. The DEA is also required to comply with the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*, by publishing the rules and interpretations the agency adopts. If the DEA had a protocol or guidelines for determining whether a substance was "substantially similar" to a controlled substance, the agency did not share or publish those guidelines to provide notice to the public at large as it did for the phrase "positional isomer." Mot. Ex. 3 (ECF No. 155-3), Definition of "Positional Isomer" as it Pertains to the Control of Schedule I Controlled Substances, 72 Fed. Reg. 67850-01 (Dec. 3, 2007).

Second, Galecki argues his knowledge of XLR11's status is a material issue in this case because the government is required to prove a defendant's knowledge under *McFadden v. United States*, 135 S. Ct. 2298 (2015). In a recent case involving the same alleged analogue, XLR11, Magistrate Judge Barbara A. McAuliffe granted in part a defense request for discovery similar to what Galecki now requests. *See United States v. Way*, Case No. 1:14-cr-0101-DAD-BAM (E.D. Cal. Dec. 20, 2017), Min. Order (ECF No. 357) (ordering the production of the monographs for UR-144 and XLR11 and the opinion of a dissenting chemist on UR-144 among other items). Judge McAuliffe also set an evidentiary hearing regarding the process and/or procedures used to determine whether an analogue is structurally similar. *Id*. Accordingly, Mr. Galecki asks the court to permit the defendants in this case to obtain the same discovery.[4]

### B. The Government's Response (ECF No. 185)

In response, the government asserts that Galecki's discovery requests are not exculpatory under *Brady*, and the motion fails to specifically articulate how the requested materials are discoverable under *Brady* or Rule 16. Nevertheless, the government agreed to provide some materials as requested in good faith and without waiving any privilege, or conceding that the

---

[4] The court notes that Galecki's current motion is virtually identical to the defense's motion in the Eastern District of California. All 13 of his discovery requests are cut and pasted from the defense's Motion for Discovery (ECF No. 352) (redacted version), although Nos. 13 and 14 there are Nos. 12 and 13 in this case. Based on the parties' representations during oral argument, Judge McAuliffe denied as moot and without prejudice Request Nos. 2 (Dr. Arthur Berrier's address), 10 (federal register), 12 (summary of expert witness testimony), and 13–14 (grand jury testimony regarding XLR11 and AM2201's structural similarity to JWH-018 and the defendant's knowledge that the substances were analogues).

9

materials are discoverable or relevant in this case. However, the government opposes other requests.

First, the government argues the requested documents are not material or relevant because Drug Evaluation is the DEA component responsible for evaluating and deciding whether a particular substance meets the definition of an analogue, not Forensic Science. Although Drug Evaluation may seek input from other components, including Forensic Science, it is Drug Evaluation's experts who decide how the DEA will treat each substance. The government maintains that because Dr. Berrier did not work in Drug Evaluation, his opinion on UR-144 was his own and had no role in the decision to treat UR-144 as an analogue. Galecki argues that Drug Evaluation circumvented protocols by not seeking input from Forensic Science on XLR11 and AM2201, as it did for UR-144. However, UR-144 is not charged in this case. In addition, Drug Evaluation does not ultimately decide whether a substance is in fact an analogue. That is a question of fact for the jury to decide. For these reasons, Drug Evaluation's internal decision to consult with other DEA components regarding UR-144 is irrelevant.

Furthermore, Dr. Berrier's dissenting opinion is not relevant or material to Galecki's knowledge of AM2201 or XLR11's analogue status. *McFadden* requires the government to prove substantial similarity by expert testimony and the mens rea element by evidence of the defendant's knowledge. Dr. Berrier's dissenting opinion regarding UR-144 could not have impacted the Galecki or his co-defendants' decision to begin producing spice in Las Vegas in 2012 because Berrier's opinion was not known outside of the DEA until 2013, well after the time-frame charged in the Superseding Indictment. Resp. at 11. The response further asserts that Drug Evaluation never sought Dr. Berrier's opinion regarding the substances charged in this case, XLR11 and AM2201, and the government has no information that he offered any opinions on those substances.

Second, the government argues the requested materials are outside the scope of Rule 16. The motion does not explain how defendants are entitled to DEA internal memoranda such as the list sought in Request No. 1. Rules 16(a)(2), 26.2, and the Jencks Act expressly prohibit discovery or inspection of reports, memoranda, or other internal government documents as well as witness statements. Galecki cannot circumvent the rules to obtain the statements of current and/or former

DEA employees David Rees, Dr. Berrier, and Special Agent Cosey. Grand jury transcripts are also specifically excluded from Rule 16 disclosures. The response argues that Galecki fails to show a particularized need for grand jury transcripts in accordance with Rule 6. Furthermore, even if Galecki could demonstrate materiality, the requested documents either do not exist or the government does not possess documents to produce. For example, analogues are not listed in the Federal Register; therefore, no responsive documents exist.

Third, the government contends the requested documents are protected by the deliberative process privilege and *Touhy* regulations. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The response indicates that any work product maintained by Rees regarding substances Drug Evaluation determined to be analogues without input from Forensic Science is privileged. Additionally, the cases Galecki cites indicating that the deliberate process privilege has been waived are not applicable here because UR-144 is not charged in this case and the internal DEA documents were only disclosed upon court order. Thus, any oral, written, analysis, opinions, or conclusions Dr. Berrier made regarding UR-144 are still privileged. The exchange of ideas between Drug Evaluation and Forensic Science is expressly the type of inter-agency communications the privilege seeks to promote and safeguard. The public is better served when DEA experts are allowed to discuss, debate, and have candid discussions about which substances are substantially similar to controlled substances under the Analogue Act.

The government acknowledges the outcome of the similar discovery motion in the Eastern District of California, and urges this court to follow that ruling. *See United States v. Way*, Case No. 1:14-cr-0101-DAD-BAM (E.D. Cal. Mar. 12, 2018), Min. Order (ECF No. 449). There, Magistrate Judge McAuliffe conducted an evidentiary hearing on February 13, 2018, regarding the process by which the DEA determines whether an analogue is structurally similar to a controlled substance. Judge McAuliffe found that the requested discovery items were "not within the government's possession custody or control, material to the defense, and [were] not *Brady*." *Id*. She therefore denied the outstanding Request Nos. 1, 3, 4, 5, 6, 7, 8, and 11. The government asserts that this court should follow Judge McAuliffe's reasoning and deny Galecki's motion.

///

**C. Galecki's Reply (ECF No. 200)**

In his reply, Galecki argues that the conflicting views between DEA scientists are material, exculpatory, and relevant to this case because a juror may conclude the defendants could not or did not have the requisite criminal intent under *McFadden* if the jury learns that Drug Evaluation did not follow procedures and the DEA's own scientists disagreed about the structural similarity of certain substances.

Although it is not charged here, Galecki contends that UR-144 is relevant to this case because it is identical to XLR11, except that XLR11 substitutes one fluorine atom for a hydrogen atom in UR-144. The substitution purportedly makes XLR11 even less similar to JWH-018 than UR-144 is to JWH-018. Thus, evidence that Forensic Science disagreed with Diversion Control regarding UR-144 may have even greater application to XLR11. The reply attaches two government memos providing guidance regarding UR-144 prosecutions based on Dr. Berrier's dissenting opinion. Reply Exs. 12–13 (ECF No. 200-1, 200-2). Galecki represents that the first memo was issued in August 2013 and the second at some unknown time thereafter. Reply at 6 n.2. In the first memo, the DEA's Associate Chief Counsel noted that Drug Evaluation "often requests" that Forensic Science "provide input regarding the chemical structure of substances" during an evaluation. Reply Ex. 12 (ECF No. 200-1). However, a revised memo was subsequently issued stating that Drug Evaluation "*may, but is not required*, to request input" from Forensic Science. Reply Ex. 13 (ECF No. 200-2) at 4 (emphasis added). Trial testimony in the District of Kansas by a different Forensic Science chemist indicates that Drug Evaluation stopped reaching out to Forensic Science for opinions on structural similarity shortly after the incident involving Berrier's dissent on UR-144. Reply Ex. 14 (ECF No. 200-3) at 32.

Finally, Galecki argues the defense has a particularized need for the grand jury transcripts and instructions regarding the analogue counts because the defendants believe the government (i) failed to properly instruct the grand jury regarding the scienter element for an analogue offense, and (ii) failed to inform the grand jury of the scientific disagreement over the charged substances status as analogues. Quoting *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011), Galecki asserts that an indictment is subject to dismissal if the government provided a legal

12

instruction to the grand jury that "seriously misstates the applicable law." when the "misstatement casts grave doubt that the decision to indict was free from the substantial influence of the erroneous instruction." Reply at 13. The reply argues that none of the distinct interests in grand jury secrecy are present here because the defendants are not seeking the identity of grand jurors; the grand jury has finished its deliberations and returned an indictment, which is now unsealed; and they will eventually receive the requested materials in the government's Jencks disclosures. Thus, the government's speculative and generalized concerns are insufficient to defeat the defendants' particularized need for disclosure.

### III. ANALYSIS

#### A. Nonexistent Documents and Materials – Request Nos. 1, 3, 4, 9, and 10

Galecki's motion fails to create an inference that the government has possession, custody, or control or the discovery materials sought in Request Nos. 1, 3, 4, 9, and 10. Galecki requests (1) a list of substances that Drug Evaluation determined to be analogues without input from Forensic Science; (3) Dr. Berrier's opinions regarding AM2201 or XLR11's similarity to JWH-018 or UR-144; (4) DEA protocols, guidelines, or policies regarding determining structural similarity; (9) a list of cases in which Special Agent Casey provided testimony regarding any company named in the Superseding Indictment; and (10) federal register publications providing notice that UR-144, AM2201, or XLR11 are analogues. The government opposes these requests because the requested materials either do not exist or are not in the government or DEA's possession. The court cannot compel the government to produce nonexistent materials. *Garcia-Gonzalez*, 791 F.3d at 1181–82 (citing *Sanchez*, 50 F.3d at 1453; Fed. R. Crim. P. 16(a)(1)(E)); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991).

As the moving party, Galecki bears the initial burden of showing the government possesses the requested documents. *See Price*, 566 F.3d at 910. He has failed to do so. The reply tacitly acknowledges that almost all of the requested items may not exist. *See* Reply at 8 (Request No. 3: "*if the government is in possession* of any opinions regarding such, they constitute *Brady* and or *Giglio* and must be disclosed"); *Id*. at 10 (Request No. 4: "*To the extent any such information exists* …"); *Id*. (Request No. 9: "like the other requested information, *if the government is aware* of any

*Brady/Giglio* material regarding Agent Cosey …"); *Id.* at 11 (Request No. 10: "*to the extent any such information exists …*") (emphasis added). The government also asserts it lacks possession of a list of substances maintained by David Rees and has no information relating to such list. The reply argues the government has waived the deliberative process privilege, but does not challenge the government's assertion that it lacks possession of such list or any information relating thereto. Reply at 5–8. The exhibits attached to Galecki's reply also suggest that no responsive documents may exist. Reply Ex. 12 (ECF No. 200-1); Reply Ex. 13 (ECF No. 200-2) at 5 (noting that Drug Evaluation did not consult with Forensic Science regarding XLR11 during the deliberative process); Reply Ex. 14 (ECF No. 200-3) at 32 (testimony stating that Drug Evaluation stopped reaching out to Forensic Science for opinions on structural similarity shortly after the incident involving Berrier's dissent on UR-144). Given Galecki's failure to create an inference that the requested documents exist, the court cannot compel the production of nonexistent documents.

In addition, Magistrate Judge McAuliffe's factual findings and reasoning in *United States v. Way*, Case No. 1:14-cr-0101-DAD-BAM (E.D. Cal. Mar. 12, 2018), Min. Order (ECF No. 449), are persuasive because the discovery requests she addressed are the same as all 13 at issue in Galecki's motion. Judge McAuliffe conducted an evidentiary hearing to clarify the process by which the DEA determines whether an analogue is structurally similar to a controlled substance. She found:

> … At the hearing, the process and the dissenting chemist, Dr. Berrier, were the discussed at length and evidence presented. The Court has considered the hearing testimony and counsel's argument and the numerous exhibits presented by defendant in various filings. **The Court finds the requested discovery items are not in the possession, custody or control of the United States**, material to the preparation of a defense, and are not *Brady*. … There is no evidence that [Drug Evaluation] had any knowledge of Dr. Berrier's dissenting opinion on any analogue. **There is no evidence that the [Drug Evaluation] had policies or protocols for determining chemical structural similarity or interacting with another section with DEA, Forensic Science**. While defendant argues that Dr. Berrier's written opinion must have disclosed and if [Drug Evaluation] did not know of it, the opinion has been wrongly "suppressed" by DEA, the court finds that whether or not it was "suppressed" is not determinative of Rule 16 and *Brady* discovery. Again, the sole evidence is that there is no evidence anyone within the [Drug Evaluation] knew of Dr. Berrier's report or opinion or knew anything about defendant's other requested documents. There are no policies or procedures for determining an analogue. Therefore, the requests for the outstanding discovery

items are not within the government's possession custody or control, material to
the defense, and are not *Brady*.

*Id*. (emphasis added). The motion for these discovery request was therefore denied.[5] Judge McAuliffe addressed the same discovery requests and the same arguments as those advanced by the parties in this case. Indeed, Galecki's arguments are largely cut and pasted from those presented in the Eastern District of California. Judge McAuliffe's findings following an evidentiary hearing support this court's conclusion that Galecki has failed to create an inference that the requested materials exist. Accordingly, the motion to compel the government to produce documents responsive to Request Nos. 1, 3, 4, 9, and 10 is denied.

**B. Internal DEA Documents and Communications Regarding Consulting With Forensic Science for XLR11 and AM2201 – Request No. 11**

In Request No. 11, Galecki seeks any e-mail, correspondence, or memoranda concerning Drug Evaluation's decision whether "to consult or not to consult with DEA Forensic Science chemists on whether XLR11 or AM2201 is chemically substantially similar in structure to JWH-018." Mot. at 5. The government opposes this request as irrelevant, beyond the scope of Rule 16, and because the request seeks documents shielded by the deliberative process privilege. It is unclear from the government's response whether responsive documents exist. Galecki maintains that the privilege does not apply.

The deliberative process privilege protects materials or records that reflect government officials' decision-making process and allows the government to withhold documents that reflect " 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated'." *Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The privilege "shields certain intra-agency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (internal quotation omitted). To qualify for protection under the privilege, documents must be both (i) "predecisional" and (ii)

---

[5] District Judge Dale A. Drozd recently upheld Judge McAuliffe's discovery ruling on reconsideration. *United States v. Way*, 2018 WL 2229272, at *9–11 (E.D. Cal. May 16, 2018) (finding that defendant had not met his burden of showing the discovery rulings were clearly erroneous).

"deliberative." *Hongsermeier*, 621 F.3d at 904. A document is predecisional if it was prepared before the adoption of agency policy to assist an agency decisionmaker in arriving at his decision. *Id*. A document is deliberative "if its release would 'expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions'." *Id*. (quoting *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002)). These two requirements recognize that the underlying purpose of the privilege is to protect the government's consultative functions by maintaining the confidentiality of advisory opinions, recommendations, and deliberations. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988).

The plain language of Request No. 11 indicates it requests privileged information, particularly when read in context of the other requests. The documents sought here are predecisional. Galecki asks for communications regarding Drug Evaluation's decision whether or not to consult with Forensic Science. He specifically asks for information leading to the decision. The requested documents are deliberative because Galecki asks for communications to expose the process by which Drug Evaluation made a decision about consulting Forensic Science. *See Nat'l Wildlife Fed'n*, 861 F.2d at 1117 ("deliberative" means the document "must actually be related *to the process* by which policies are formulated") (emphasis added). This is exactly the type of "consultative function" the privilege aims to protect. *Id*.

The wording of Request No. 6 also supports this conclusion. No. 6 asks for "All protocols or guidelines or policies setting forth the circumstances when [Drug Evaluation] would seek a second opinion of DEA's Forensic Science Department, or any other part of DEA, and the weight [Drug Evaluation] is to give to that second opinion, if any." Mot. at 4.[6] In contrast to Request No. 11, No. 6 asks for established guidelines or policies and any objective criteria Drug Evaluation used to evaluate opinions by other DEA components. To the extent any responsive documents exist for Request No. 11, the court finds that such intra-agency communications are shielded by the deliberative process privilege. *See Lahr*, 569 F.3d at 979.

---

[6] The government opposed Request No. 6 but agreed to provide a DEA internal cable from the analogue committee discussing the various roles of DEA components with regard to analogues.

### C. Grand Jury Transcripts – Request Nos. 12 and 13

Request Nos. 12 and 13 seek transcripts of grand jury witnesses who testified regarding the structural similarity of XLR11 and AM2201 to JWH-018 and defendant's knowledge regarding AM2201 and XLR11's use and analogue status. These requests are based on defendants' belief that the government (i) failed to properly instruct the grand jury regarding the scienter element for an analogue offense, and (ii) failed to inform the grand jury of the scientific disagreement over the charged substances status as analogues.

A grand jury is tasked with the "gateway function" of determining whether there is probable cause to believe a crime has been committed. *Kaley v. United States*, --- U.S. ----, 134 S. Ct. 1090, 1103 (2014).[7] Its role is related to those of the judicial branch and the prosecutorial arm of the executive branch, but the principle of grand jury independence is firmly rooted and jealously protected in the federal justice system. *United States v. Williams*, 504 U.S. 36, 48 (1992). Because it is an independent investigative body, federal courts have consistently accorded a grand jury "wide latitude to inquire into violations of criminal law" and avoid intrusion in its proceedings. *United States v. Calandra*, 414 U.S. 338, 343 (1974). The Supreme Court has recognized that the grand jury's investigative power must be broad in order to adequately discharge its public responsibility. *Id.* at 344.

The general rule of secrecy of grand jury proceedings is essential to its purpose. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958). Exceptions to the general rule are few. The court may authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "The district court is vested with substantial discretion in assessing a request for disclosure under Rule 6(e)." *In re Grand Jury Proceedings*, 62 F.3d 1175, 1180 (9th Cir. 1995) (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

A party seeking the disclosure must show a particularized and compelling need for the disclosure that outweighs the policy of grand jury secrecy. *Dennis v. United States*, 384 U.S. 855,

---

[7] Probable cause "is not a high bar: It requires only the kind of fair probability' on which reasonable and prudent people, not legal technicians, act." *Kaley*, 134 S. Ct. at 1103 (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotation marks and alterations omitted)).

17

870 (1996); *In re Grand Jury Investigation*, 642 F.2d 1184, 1191 (9th Cir. 1981). Unsubstantiated speculative assertions of improprieties do not supply the particular need required to outweigh the policy of grand jury secrecy. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980).

The Supreme Court has long held that "an indictment valid on its face" is not subject to challenge based on "the reliability or competence of the evidence presented to the grand jury." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) (citing *Calandra*, 414 U.S. at 344–45); *see also United States v. Renzi*, 651 F.3d 1012, 1027 (9th Cir. 2011). The grand jury system is designed to shield individuals against unfounded accusations and it protects the individual by requiring probable cause to indict. *E.g.*, *Williams*, 504 U.S. at 51 (the grand jury's theory of function is to "assess whether there is adequate basis for bringing a criminal charge" and serve "as a kind of buffer or referee between the government and the people"); *United States v. Dionisio*, 410 U.S. 1, 16–17 (1973) (the grand jury's "mission is to clear the innocent, no less than to bring to trial those who may be guilty"). The Supreme Court reasoned that it "would make little sense . . . to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading'." *Williams*, 504 U.S. at 54.

Applying these principles, the court finds that Mr. Galecki has not met his burden of showing that disclosure is appropriate. *See Dennis*, 384 U.S. at 870–72. The request is based purely on Galecki's speculation that the grand jury may not have been properly instructed on the mens rea requirement, and argument that the grand jury should have been informed of scientific disagreement over the charged substances status as analogues. Rule 16(a)(3) specifically precludes disclosure grand jury transcripts from discovery with few exceptions. The defense has not demonstrated that an exception applies. Rules 16(a)(2), 26.2, and the Jencks Act also preclude disclosure of reports, memoranda, or other internal government documents as well as witness statements by prospective government witnesses. Pursuant to the stipulated complex case scheduling orders, the government is obligated to disclose witness statements no later than seven

days before trial. *See* ECF Nos. 24, 83, 106 (citing 18 U.S.C. § 3500).[8] The response notes that the government will produce grand jury transcripts if a witness that testified before the grand jury also testifies at trial. Galecki's reply acknowledges this obligation but asserts that the government fails to rebut his arguments for immediate disclosure. His speculation that the grand jury may have been improperly instructed is insufficient to warrant immediate disclosure. *See, e.g.*, *United States v. Hearst*, 412 F. Supp. 863, 869 (N.D. Cal. 1975) (even if there is a particularized need, § 3500(a) only allows production of a government witness' grand jury transcripts *after* the witness has testified at trial) (citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959)).

Mr. Galecki has not established a particularized, nonspeculative need for disclosure. His arguments demonstrate an intent to challenge "the reliability or competence of the evidence presented to the grand jury" regarding the scienter element of the analogue charges and the scientific evidence showing that AM2201 and XLR11 are analogues. *Bank of Nova Scotia*, 487 U.S. at 261. A grand jury proceeding is not an adversary hearing in which the accused's guilt or innocence is adjudicated; rather, "it is an ex-parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted." *Calandra*, 414 U.S. at 343–44. Thus, prosecutors have no duty to present exculpatory evidence to grand juries, including evidence regarding credibility of witnesses. *Williams*, 504 U.S. at 51–52; *United States v. Al Mudarris*, 695 F.2d 1182, 1186 (9th Cir. 1983). Galecki's desire to review the grand jury testimony to determine whether prosecutors misstated the scienter element or presented evidence of scientific disagreement is clearly not allowed under well-established Supreme Court and Ninth Circuit law. The court has completed a thorough review of the analogue charges in this case and found them to sufficiently state offenses under Rule 7(c)(1). *See* Report of Findings & Recommendation (ECF No. 204). The Superseding Indictment (ECF No. 56) is valid on its face and, under controlling authority, the court may not look beyond the indictment before trial.

For the reasons explained,

///

---

[8] This is earlier than what is required by the Jenks Act. *See* 18 U.S.C. § 3500(b) (requiring the production of any statement of a witness called by the United States *after* the witness testifies on direct examination).

19

**IT IS ORDERED:**

1. Charles Burton Ritchie and Ryan Matthew Eaton's Motions for Joinder (ECF Nos. 158, 165) are **GRANTED** as to their request to join in Galecki's substantive arguments.
2. Defendant Benjamin Galecki's Motion for Specific Discovery (ECF No. 155) is:
   a. **DENIED** in its entirety as to Request Nos. 1, 3, 4, 9, 10, 11, 12, and 13.
   b. The court will enforce the government's agreement to produce certain documents responsive to Request Nos. 2, 5, 6, 7, and 8.

Dated this 6th day of July, 2018.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE