|     |     |
| --- | --- |
| UNITED STATES OF AMERICA, | Case No.: 2:15-cr-00285-APG-PAL |
| Plaintiff | **Order Denying the Government's Motion in Limine** |
| v. | |
| CHARLES BURTON RITCHIE, BENJAMIN GALECKI, and RYAN MATTHEW EATON, | [ECF No. 176] |
| Defendants | |

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

The Government moves to preclude two categories of evidence. First, it seeks to preclude the defendants from presenting testimony on the defenses of entrapment by estoppel, public authority, or reliance on advice of legal counsel, including testimony regarding the defendants' conversations with Drug Enforcement Agency (DEA) Special Agent Cosey, attorneys David McGee and Timothy Dandar, and other individuals with whom the defendants consulted regarding the legality of their operation. Second, the Government seeks to exclude evidence about chemicals not charged in the superseding indictment.

Defendant Benjamin Galecki responds that the conversations with Cosey negate the knowledge element of the charged offenses, as do the defendants' conversations with lawyers and chemists that show they acted in good faith. Galecki concedes that these conversations primarily occurred after the search of the Las Vegas warehouse, but he argues that at least some of them occurred during the time frame of the conspiracy alleged in the superseding indictment. Galecki suggests the defendants should be able to present this evidence, both to negate mens rea and to give context to the events. Galecki also argues he should be able to offer expert opinions

about uncharged chemicals because that evidence is relevant to showing the charged chemicals are not substantially similar to a listed controlled substance.

# I. ANALYSIS

## A. Defenses

A district court may prevent a defendant from presenting an affirmative defense that is not supported by evidence or fails as a matter of law. *See United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009). The court also may exclude any testimony on the failed affirmative defense. *See United States v. Bailey*, 444 U.S. 394, 416 (1980) ("If . . . an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense."); *United States v. Moreno*, 102 F.3d 994, 998-99 (9th Cir. 1996). However, a defendant is entitled to put the Government to its burden of proving each element of the charged offense, and thus may present evidence that tends to negate an essential element of the Government's case. *See United States v. Doe*, 705 F.3d 1134, 1145-47 (9th Cir. 2013) (distinguishing between affirmative defenses like duress that do not controvert any element of the offense and defenses that would negate an essential element of the crime charged); *United States v. Jumah*, 493 F.3d 868, 873-75 (7th Cir. 2007), *as corrected* (July 20, 2007) (explaining the difference between affirmative defenses and "failure of proof" defenses).

### 1. Entrapment by Estoppel and Public Authority

The day after the search warrant was executed in Las Vegas, defendant Charles Burton Ritchie contacted DEA Special Agent Cosey to inspect the Zencense facilities in Florida. The Government anticipates the defendants will attempt to use Ritchie's conversations with Cosey to argue that they relied on Cosey's statements to assert entrapment by estoppel or public authority

defenses. The Government argues the defendants cannot meet these defenses' requirements because Cosey was not authorized to render advice on the legality of the operation, Cosey did not know all relevant facts because he did not know the product was intended for human consumption, and it is impossible for the defendants to have relied on Cosey's statements because Ritchie did not speak to Cosey until after the manufacturing in Las Vegas had ceased. Finally, the Government contends defendants Galecki and Eaton cannot rely on this defense because only Ritchie spoke with Cosey. Galecki responds that at least some of Ritchie's conversations with Cosey occurred during the time frame of the conspiracy alleged in the superseding indictment. Galecki also argues the defendants should be able to present this evidence both to negate mens rea and to give context to the events.

"Entrapment by estoppel is the unintentional entrapment by an official who mistakenly misleads a person into a violation of the law." *United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004) (quotation omitted). It is an affirmative defense that requires the defendant to show that "(1) an authorized government official, empowered to render the claimed erroneous advice, (2) who has been made aware of all the relevant historical facts, (3) affirmatively told him the proscribed conduct was permissible, (4) that he relied on the false information, and (5) that his reliance was reasonable." *United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004) (internal quotations and citations omitted).

Closely related to entrapment by estoppel is the public authority affirmative defense. This defense "is properly used when the defendant reasonably believed that a government agent authorized her to engage in illegal acts." *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006); *see also United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994) (stating the defense applies when a "government official makes some statement or performs some act and the

defendant relies on it, possibly mistakenly, and commits an offense in so doing."). The defendant's belief must be both "reasonable" and "sincere." *Burrows*, 36 F.3d at 882.

The defendants have not shown that they can present evidence supporting each element of either of these defenses. There is no evidence Special Agent Cosey was authorized to offer an opinion on the legality of the defendants' activities in Las Vegas. Further, the evidence does not support a finding that Cosey affirmatively told Ritchie that his activities in Las Vegas were legal or that the items he was manufacturing were not analogues or controlled substances. Cosey did not know what substances Ritchie was using and so he did not know whether Ritchie's activities were legal. *See* ECF No. 184-3 at 20, 27. Cosey thus made equivocal statements that if what Ritchie was manufacturing was not a controlled substance, then law enforcement could not shut down his business, and that the compounds Ritchie was manufacturing and selling "may not be controlled at the present time," but the laws were constantly changing. ECF No. 184-2 at 11-12. Although Cosey did not tell Ritchie his activities were illegal, the evidence currently before me does not show he affirmatively told Ritchie that his activities were legal.

Finally, there is no evidence the defendants relied on anything Cosey said in relation to their activities in Las Vegas. Although the superseding indictment alleges the conspiracy continued into August, the manufacturing of the charged substances ceased once the warehouse was searched on July 25, 2012. Ritchie contacted Cosey the next day. Thus, the defendants could not possibly have relied on anything Cosey said in relation to their manufacturing activities in Nevada. The defendants therefore cannot make out an entrapment by estoppel defense.

For these same reasons, the defendants have not shown they can present evidence to support each element of a public authority defense. The defendants could not have reasonably or sincerely relied on representations Cosey made after their manufacturing operation in Nevada

4

was shut down. Nor is there evidence Cosey made any representation about what the defendants were manufacturing in Nevada.

### 2. Advice of Counsel

The defendants consulted attorneys Timothy Dandar and David McGee. The Government anticipates the defendants will seek to introduce their conversations with these attorneys to show good faith and thus negate intent. The Government argues the defendants should be precluded from offering this testimony, either through the attorneys or through their own testimony, because those conversations occurred after the search of the Las Vegas warehouse, so the defendants could not have relied on those conversations. The Government also contends the defendants did not tell the attorneys the products were intended for human consumption, so the attorneys were not aware of all material facts when rendering their opinions.

Galecki responds that even though McGee and Dandar gave advice after the search of the warehouse in Las Vegas, it is relevant to establish the defendants' good faith and provides context to the events. Galecki also contends that the lawyers knew the substances would be smoked, so they knew all relevant facts.

"[A]dvice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith . . . ." *United States v. Bush*, 626 F.3d 527, 540 (9th Cir. 2010) (quotation omitted). "An advice-of-counsel instruction requires the defendant show that he made a full disclosure of all material facts to his attorney and that he then relied in good faith on the specific course of conduct recommended by the attorney." *Id.* at 539 (quotation omitted).

It is not entirely clear from the parties' submissions when the defendants had communications with attorneys and what those communications were. Galecki seems to concede the communications where the attorneys advised the defendants about their specific activities

came after the defendants ceased their activities in Las Vegas. If so, the defendants could not have relied on that advice in relation to the events in the superseding indictment. Consequently, at this time it appears the defendants cannot present evidence to support an advice of counsel defense because there is no evidence that the defendants made a full disclosure of all material facts to an attorney and then relied in good faith on that attorney's advice before (or at least during) their manufacturing activities in Las Vegas.

### 3. Testimony on Knowledge

The Government contends that because the defendants cannot meet the requirements of the defenses, they should not be allowed to introduce any testimony related to them. The Government also suggests that the testimony would be hearsay. The defendants respond that they are permitted to present evidence that negates an essential element of the Government's case. They argue this evidence is circumstantial proof of their lack of knowledge that what they were manufacturing in Las Vegas was a controlled substance. They also argue this evidence is not hearsay because it is being offered for the effect on the defendants' state of mind, not for the truth of the matter asserted.

The superseding indictment charges the defendants with, among other things, conspiring to manufacture a controlled substance under the Controlled Substance Analogue Enforcement Act of 1986 (Analogue Act). ECF No. 56. The Analogue Act "identifies a category of substances substantially similar to those listed on the federal controlled substance schedules, 21 U.S.C. § 802(32)(A), and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law, § 813." *McFadden v. United States*, 135 S. Ct. 2298, 2302 (2015). "The Controlled Substances Act

(CSA) in turn makes it unlawful knowingly to manufacture, distribute, or possess with intent to distribute controlled substances" under 21 U.S.C. § 841(a)(1). *Id.*

Section 841(a)(1) "requires the Government to establish that the defendant knew he was dealing with a controlled substance." *Id.* (quotation omitted). When the substance at issue is an analogue, this knowledge requirement "can be established in two ways." *Id.* at 2305. First, the Government can present evidence that the defendant "knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance." *Id.* Second, the Government can present evidence that the defendant knew "the characteristics of the substance that qualify that substance as an analogue—that is, its substantial similarity to a Schedule I or II controlled substance in chemical structure and actual, intended, or represented effect on the central nervous system." *United States v. Demott*, 906 F.3d 231, 242 (2d Cir. 2018) (emphasis omitted); *see also McFadden*, 135 S. Ct. at 2305 (citing 21 U.S.C. § 802(32)(A)). "A defendant who possesses a substance with knowledge of those features knows all of the facts that make his conduct illegal, just as a defendant who knows he possesses heroin knows all of the facts that make his conduct illegal." *McFadden*, 135 S. Ct. at 2305.

The defendants' discussions with Cosey, lawyers, and a chemist, if credited by the jury, tend to negate the knowledge element because these discussions relate to whether the defendants knew AM2201 and XLR-11 were controlled substances. The defendants' willingness to discuss their activities with a DEA agent may suggest a lack of knowledge because they did not flee or hide their activities from law enforcement. *See id.* at 2304 n.1 (stating knowledge can be shown through direct and circumstantial evidence, including evidence of "a defendant's concealment of

his activities" and "evasive behavior with respect to law enforcement"); *United States v. Makkar*, 810 F.3d 1139, 1147-48 (10th Cir. 2015) (stating the court had a "hard time imagining more powerful proof" of lack of knowledge than that the defendant "turned to law enforcement for information about the drug's composition and offered to suspend sales until tests could be performed"). Advice from lawyers and a chemist that the substances were not analogues also would support a lack of knowledge that they were dealing with a controlled substance. The fact that the defendants obtained most of this advice after they had already ceased manufacturing in Las Vegas goes to the weight of this evidence, not its admissibility.

The timing will certainly be fruitful fodder for the Government's cross-examination of witnesses and argument to the jury. The jury may conclude that the defendants' conduct after the raid was merely an after-the-fact attempt to cover their tracks rather than evidence of a prior lack of knowledge and sincere attempt to determine the legality of their activities. But that will be for the jury to resolve. I will not preclude the defendants from presenting evidence that may negate an essential element of the Government's case. *See United States v. Way*, No. 1:14-cr-0101-DAD-BAM, 2018 WL 2229272, at *5 (E.D. Cal. May 16, 2018) (stating that "evidence as to the advice a defendant received from his counsel is potentially relevant to prove that the defendant attempted in good faith to comply with the requirements of the Analogue Act"); *United States v. Reulet*, No. 14-40005-DDC, 2016 WL 126355, at *4-5 (D. Kan. Jan. 11, 2016) (stating similar evidence was "fair game" because if "the government attempts to prove knowledge by showing defendants knew they possessed a substance substantially similar to a controlled substance, then argument and evidence that defendants did not know about or were mistaken about the similarities is relevant").

1       Finally, as to the Government's hearsay objection to the defendants' own testimony about
2 their conversations with others, the Government will have to object to particular questions and
3 answers at trial. I cannot categorically determine that all such evidence would be inadmissible
4 hearsay, particularly where the defendants contend they will elicit the testimony not for the truth
5 of the matter asserted (the substances are not analogues), but for its alleged effect on their
6 knowledge (the defendants did not know the substances were controlled because a DEA agent
7 did not tell them their activities were illegal, and lawyers and a chemist were telling them the
8 substances were not analogues). *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991)
9 (holding that a statement was non-hearsay where it was not offered for the truth of the matter
10 asserted but to "show the effect on the listener"); Fed. R. Evid. 801(c). I therefore deny this
11 portion of the Government's motion.

**B. Chemicals Not Charged in the Superseding Indictment**

13       The chemicals charged in the superseding indictment are XLR-11 and AM2201, which
14 allegedly are analogues of JWH-018, a schedule I controlled substance. The Government
15 anticipates the defendants will attempt to elicit testimony about an uncharged substance, UR-
16 144. The Government contends testimony about an uncharged chemical is irrelevant and would
17 mislead and confuse the jury.

18       Galecki responds by arguing that evidence about uncharged substances is relevant
19 because one expert, Dr. Dudley, has opined that CB-13 (an uncharged substance) is not
20 substantially similar to the listed substance JWH-018, yet CB-13 is more similar to JWH-018
21 than is XLR-11 (the charged substance). Additionally, former DEA employee Dr. Berrier
22 determined UR-144, which experts agree is essentially equivalent to XLR-11, is not substantially

similar to JWH-018. Galecki argues these opinions will support his argument that XLR-11 is not substantially similar to JWH-018.

Evidence that uncharged chemicals are not substantially similar to JWH-018, combined with evidence that those same chemicals are either (1) more similar to JWH-018 than is XLR-11 or (2) are chemically equivalent to XLR-11, is relevant to prove that XLR-11 is also not substantially similar to JWH-018. *See United States v. Ritchie*, 734 F. App'x 876, 877 n.2 (4th Cir. 2018) ("All of the expert testimony in this case agreed that XLR-11 and UR-144 are indistinguishable, and the Government treats them as the same substance."); *Way*, 2018 WL 2229272, at *2 (allowing such evidence if the expert can "competently testify" that UR-144 and XLR-11 are "substantially similar to one another," because the expert concluded that UR-144 and JWH-018 are not substantially similar, and "it may be that he could testify that he believes XLR11 and JWH-018 are also not substantially similar to one another and explain the basis for that opinion"). The Government has not shown that the probative value of this evidence is substantially outweighed by the danger of misleading or confusing the jury. Fed. R. Evid. 403. The Government will have its own experts and it can address in closing arguments why it believes the jurors should not credit testimony related to the uncharged substances. Should the defendants' (or the Government's) experts stray too far afield, I have discretion to control the presentation of witnesses and evidence at trial. *See Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015); Fed. R. Evid. 403, 611. I therefore deny this portion of the Government's motion.

/ / / /

/ / / /

/ / / /

/ / / /

## II. CONCLUSION

IT IS THEREFORE ORDERED that the Government's motion in limine (**ECF No. 176**) **is DENIED**.

DATED this 13th day of December, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE