# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES BURTON RITCHIE, BENJAMIN GALECKI,

    Defendants.

Case No.: 2:15-CR-0285-APG-GWF

**FORFEITURE ORDER**

Charles Burton Ritchie and Benjamin Galecki were convicted of 24 counts, including Continuing Criminal Enterprise, Money Laundering, Mail and Wire Fraud, crimes related to controlled substance analogues, and conspiracy. ECF No. 439. The Government seeks a forfeiture money judgment and the forfeiture of cash and properties it previously seized. The parties waived their right to a jury determination of the forfeiture issues, so I conducted an evidentiary hearing on July 8, 2019. I previously ruled on the scope of the Government's ability to forfeit property in this case. ECF No. 441. I incorporate that order. I will not repeat the underlying facts as the parties are well-familiar with them. Based on the evidence presented during the trial and the July 8, 2019 hearing, I make the following findings.

"[T]he government must prove by a preponderance of the evidence that property is subject to forfeiture." *United States v. Adams*, 189 F. App'x 600, 602 (9th Cir. 2006) (citing *United States v. Garcia–Guizar*, 160 F.3d 511, 517 (9th Cir. 1998)). Because the defendants were convicted of operating a Continuing Criminal Enterprise, they must forfeit their "interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise." 21 U.S.C. § 853(a)(3).

The Government also may seek forfeiture of "any property obtained by the defendant[s] directly or indirectly as a result of the commission of a mail fraud or wire fraud offense." *United*

States v. Lo, 839 F.3d 777, 793 (9th Cir. 2016). This includes proceeds traceable to the fraud schemes.

Because the defendants were also convicted of money laundering, they must "forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). *See Adams*, 189 F. App'x at 602. "A criminal defendant, however, may be ordered to forfeit only property purchased with proceeds from the crimes 'for which [he] was convicted.'" *Id.* (citation omitted) (emphasis in original). Thus, proceeds of activities that pre-date the crimes of conviction may not be forfeited unless they were "involved in" or facilitated the crimes of conviction. 18 U.S.C. § 982(a)(1). "Property involved in an offense include[s] the money or other property being laundered (the corpus), . . . *and any property used to facilitate the laundering offense*. . . . Facilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998) (citations and internal quotes omitted) (emphasis in original).

I. **FORFEITURE MONEY JUDGMENT**

The Government seeks a forfeiture money judgment against Ritchie and Galecki in the amount of $2,534,319.62. That amount is the gross proceeds that their Continuing Criminal Enterprise (operated through their entity ZIW, LLC) received from the sale of synthetic cannabinoids between March 21, 2012 (the date ZIW registered to do business in Nevada) and July 31, 2012 (which was approximately seven days after the July 25, 2012 seizure of materials in Nevada).[1] The defendants owned ZIW and used it to fund and operate their Nevada operation. The defendants argue there was no Continuing Criminal Enterprise (CCE) until at least three qualifying violations occurred, and therefore the starting date for the forfeiture calculation should be no earlier than June 1, 2012 (the earliest the Nevada operation could have started). The Government responds that the defendants moved the manufacturing part of their business to

---

[1] Testimony at trial showed that ZIW would usually sell the finished product to customers within seven days. Thus, the July 31 date should capture most of the proceeds of the sale of the material that had been shipped from Nevada on July 24, 2012.

2

Nevada specifically to conduct the CCE, so preparation time should be counted as part of the CCE.

ZIW bankrolled the start-up of the Nevada operation. ZIW's bank account was the source of (1) rental payments for the Nevada warehouse; (2) funds to purchase the chemical, equipment, and materials used in producing the illegal product; and (3) reimbursement to Ryan Eaton for his rented apartment in Nevada. Although these activities predate the beginning of the Nevada manufacturing operation, they were part of the CCE's activities and helped facilitate the commission of the crimes. Later, proceeds of the sale of Nevada-manufactured drug analogues were deposited into ZIW's bank account. ZIW's funds afforded the defendants "control over" the CCE, were involved in and facilitated the commission of the crimes, and are traceable to the illegal activities. Thus, those funds are subject to forfeiture.[2]

The Government proved by a preponderance of the evidence that, during the relevant time period, ZIW received gross proceeds from the sale of synthetic cannabinoids of $2,534,319.62. Exh. 102. The defendants argue that not all synthetic cannabinoids are illegal, and that ZIW also sold legal merchandise, including detoxification products, herbal medicines, and e-cigarettes. However, Rachel Templeman, a salesperson for ZIW during that time, testified that ZIW stopped selling those other products by the first quarter of 2012. And no evidence was presented that ZIW sold legal synthetic cannabinoids during the relevant period. Therefore, the Government is entitled to a forfeiture money judgment in the amount of $2,534,319.62. Given the nature of the offenses the defendants were convicted of, and the proceeds they received from their operations, this amount is not "an excessive monetary punishment in relation to the offense giving rise to the forfeiture." *United States v. Wild*, 47 F.3d 669, 676 (4th Cir. 1995).

---

[2] Because the defendants were convicted of money laundering under 18 U.S.C. § 1956, ZIW's funds are also forfeitable under 18 U.S.C. §§ 981 and 982 because they are proceeds of and involved in the fraudulent activities. *See United States v. $448,342.85*, 969 F.2d 474, 476-77 (7th Cir. 1992) ("Money need not be derived from crime to be 'involved' in it [if it] is used as the bankroll facilitating the fraud.").

3

Ritchie owned 80% of ZIW and Galecki owned 20%. *See* Exh. 106 at 3 (deposition p. 8); Exh. 107 at 7-8. Galecki argues that he therefore should be subject to only 20% of the money forfeiture judgment. But Galecki, like Ritchie, was an authorized signatory on the ZIW bank account and thus had control over, and the ability to use, all of those funds. Thus, he is liable for the entire judgment amount.

Joint and several liability is not permitted for forfeiture judgments. *Honeycutt v United States*, 137 S.Ct. 1626, 1630 (2017). Both Ritchie and Galecki had control over ZIW's funds and the CCE, and both benefitted personally from the illegal activities. Therefore, each of them is individually liable for the full amount of the $2,534,319.62 forfeiture money judgment.

## II. SEIZED PROPERTY TO BE FORFEITED

The Government seized several properties from the defendants and others, including bank accounts, vehicles, and a condominium. It now seeks to forfeit those properties to apply against the forfeiture money judgment.

### Subject Property #1: ZIW's GCCB account

On July 31, 2012, the Government seized $177,844.68 from ZIW's Gulf Coast Community Bank account number 0001304740 (the "4740 account"). Those funds are properly forfeited under 21 U.S.C. § 853(a)(3) as they afforded the defendants control over the CCE. The entire amount is also forfeitable under 21 U.S.C. § 853(a)(1) as proceeds of the defendants' drug crimes, and forfeitable under 18 U.S.C. §§ 981 and 982 as property involved in money laundering and traceable to such property. *Adams*, 189 F. App'x at 602. *See also United States v. $448,342.85*, 969 F.2d at 476-77 ("Money need not be derived from crime to be 'involved' in it [if it] is used as the bankroll facilitating the fraud.").

### Subject Property #2: Ritchie's GCCB account

The Government seized $296,746.66 from Gulf Coast Community Bank account number 00003305034 (the "5034 account") managed by defendant Ritchie. IRS Special Agent Matt Schaefer traced $734,800 in "dirty" funds from the ZIW 4740 account directly to this account.

After using a LIBR analysis,[3] Schaefer concluded that $294,151 was the amount of remaining "dirty" funds that are subject to forfeiture. I agree.

### Subject Property #6: Stephanie Ritchie's Fidelity Investment account

The Government seized $1,002,327 from Fidelity Investment Brokerage account number 648169730 (the "Fidelity account") held in the name of Ritchie's wife Stephanie. Special Agent Schaefer traced $75,150 in dirty deposits into this account from Subject Property #1 through Subject Property #2. He testified that his LIBR analysis concluded that $75,082.76 in dirty funds remained in the account as of July 31, 2012. That amount is forfeited.

### Subject Property #7: Ritchie's Bank of America account

The Government seized $46,173.56 from Bank of America account number 501014213971 (the "BofA account") managed by Ritchie. Special Agent Schaefer testified that this account became the *de facto* ZIW operating account after the seizure of the 4740 account. He traced $241,737 in dirty funds to this account from Subject Property #1 through Subject Property #2. His LIBR analysis determined that $92,408 in dirty funds remained in this account as of July 31, 2012. Because less than that was seized on January 3, 2013, the entire amount seized ($46,173.56) is forfeited.

### Subject Property #5: Chevrolet Van

Special Agent Schaefer testified that a Chevrolet Cutaway van was purchased using $17,000 from ZIW's 4740 account (Subject Property #1) and a $5,000 credit card down payment. Exh. 102. The van therefore is traceable to proceeds of the criminal activity and forfeited.

### Ritchie's Las Vegas Condominium

Special Agent Schaefer testified that Ritchie purchased a condominium in Las Vegas with a $137,567.86 wire transfer from ZIW's 4740 account (Subject Property #1). Exh. 102. The condominium is traceable to proceeds of the criminal activity and forfeited.

---

[3] Briefly, LIBR assumes withdrawals and distributions from a bank account come first from "clean" funds until those are exhausted. All subsequent withdrawals and distributions are presumed to come from "dirty" funds.

### Subject Property #3: Psychedelic Shack bank account

The Government seized $39,451.60 from Gulf Coast Community Bank account number 00001304690 (the "Psychedelic Shack Account") held in the name of Psychedelic Shack Inc. ("PS"). The Government argues that these funds are forfeitable because (1) Ritchie owned PS, (2) during the relevant time period, PS purchased $90,497.50 worth of synthetic cannabinoids from ZIW,[4] and (3) PS resold the synthetic cannabinoids for a significant profit. The Government contends the seized funds are forfeitable as either property of the CCE or traceable to tainted property.

The Government has not shown by a preponderance of the evidence that the funds seized from PS are traceable to tainted property. The Government offered no evidence showing that the products PS purchased from ZIW were resold, as opposed to given away as free samples, and witnesses testified at trial that ZIW encouraged smoke shops to give away its product as free samples. The Government offered no records of sales by PS of ZIW's products. Evidence confirmed that PS sold other products not purchased from ZIW. Proceeds of the sale of legal products would not be subject to forfeiture. *See Honeycutt*, 137 S.Ct. at 1632 (21 U.S.C. § 853 limits forfeiture to "property flowing from . . . or used in . . . the crime itself"). *See also United States v. Young*, 330 F. Supp. 3d 424, 428-429 (D.C.D.C. 2018) (same). Special Agent Schaefer testified that he could not allocate or distinguish the seized funds between proceeds of the sale of legal items (e.g., T-shirts, pipes) and proceeds of the sale of ZIW's products.

The Government contends the funds seized from PS's bank account are subject to forfeiture because they were held by the CCE. This argument fails for at least two reasons. First, it ignores the language of 21 U.S.C. § 853, which allows forfeiture of "property . . . . affording a source of control over, the continuing criminal enterprise." The statute does not refer to property "held by" the CCE. If Congress intended the statute to refer to all property held by the CCE, it could have easily said so. It did not, and I will not read that language into the statute.

---

[4] Special Agent Schaefer testified that he "assumed" the funds sent from PS to ZIW were to purchase illegal synthetic cannabinoids.

6

And there is no evidence that PS was a source of control over the CCE. No evidence was presented that PS had any influence (let alone control) over ZIW's operations.

Second, the Government has not proven that PS was part of the CCE. The Government contended throughout this case that Ritchie and Galecki operated ZIW as the CCE. The only evidence presented about PS is that Ritchie owned some or all of the company and PS purchased product from ZIW before and after the start date of the Nevada operation. There is no evidence that Ritchie was operating PS as a way to hide proceeds of ZIW sales. Nor was there evidence that he operated PS as an alter ego or that he comingled ZIW's funds with PS's accounts. Rather, PS was a separate entity with separate books and records.

Finally, the Government argued that it can seize and forfeit all bank accounts and funds that were commingled with the CCE's money. I previously rejected that argument as overly broad. ECF No. 441. *See also Bornfield*, 145 F.3d at 1135 ("[T]he mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture. . . . However, forfeiture of legitimate and illegitimate funds commingled in an account is proper as long as the government demonstrates that the defendant pooled the funds to facilitate, i.e., disguise the nature and source of, his scheme.").

The Government is not permitted to forfeit the funds seized from the Psychedelic Shack Account.

### Subject Property #4: Ford Truck

The Government contends the defendants purchased a Ford F-250 Pickup Truck using funds from the Psychedelic Shack Account, and therefore it is traceable to tainted money. Exh. 102.[5] Because the Psychedelic Shack Account is not forfeitable, neither is the truck.

////

////

---

[5] Exhibit 102 references two different bank account numbers for Psychedelic Shack Account: account 4690 under subject property 3 and account 4670 under subject property 4. Assuming this is a typographical error, it does not change my analysis.

### III. CONCLUSION

IT IS ORDERED as follows:

The Government is entitled to a criminal forfeiture money judgment against defendant Charles Burton Ritchie in the amount of $2,534,319.62.

The Government is entitled to a criminal forfeiture money judgment against defendant Benjamin Galecki in the amount of $2,534,319.62.

The following properties are forfeited and are to be applied by the Government against the criminal forfeiture money judgment:

1. $177,844.68 from ZIW's Gulf Coast Community Bank account number 0001304740;
2. $294,151 from Gulf Coast Community Bank account number 00003305034;
3. $75,082.76 from Fidelity Investment Brokerage account number 648169730;
4. $46,173.56 from Bank of America account number 501014213971
5. 2011 Chevrolet 3500 Express Van, VIN: 1GB3G3CG9B1113885; and
6. The real property known as 260 East Flamingo Road, Unit No. 205, Las Vegas, Nevada 89169.

DATED this 2nd day of August, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE